Helen Trac
HOGAN LOVELLS US LLP
3 Embarcadero Center, Suite 1500
San Francisco, California 94111
(415) 374-2300
(415) 374-2499 (fax)
helen.trac@hoganlovells.com

Adam K. Levin (admitted *pro hac vice*)
adam.levin@hoganlovells.com
Kathryn M. Ali (Bar No. 282042)
kathryn.ali@hoganlovells.com
Kaitlyn A. Golden (admitted *pro hac vice*)
kaitlyn.golden@hoganlovells.com
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
(202) 637-5910 (fax)

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARBJIT DHESI,<br><br>Plaintiff,<br><br>v.<br><br>AVELLA OF DEER VALLEY. INC., ET AL.,<br><br>Defendants. | Case No.: 3:18-cv-06476-JD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON THE AMERIFACTORS ISSUE**<br><br>Judge: The Hon. James Donato |

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 2

I. THE UNDISPUTED FACTS SHOW THAT PLAINTIFF RECEIVED THE FAX USING AN "ONLINE FAX SERVICE." ........................................... 2

II. THIS COURT SHOULD DEFER TO THE AMERIFACTORS RULING AND HOLD THAT PLAINTIFF'S CLAIM IS OUTSIDE THE SCOPE OF THE TCPA. ........................................................................................ 4

A. The AmeriFactors Ruling Is Controlling Because The Relevant Statutory Terms Are Ambiguous. ........................................................ 5

B. The Hobbs Act Applies To The AmeriFactors Ruling And Is Dispositive. ........................................................................................ 7

C. In The Alternative, *Chevron* Deference Compels The Same Result. ......... 9

III. PLAINTIFF'S REMAINING ARGUMENTS ARE WRONG. ........................... 11

A. The AmeriFactors Ruling Is Consistent With Previous FCC Rulings And Governs This Case ........................................................... 11

B. The AmeriFactors Ruling Applies Retroactively...................................... 13

IV. IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS CASE BASED ON THE DOCTRINE OF PRIMARY JURISDICTION. .......................................................................................... 14

CONCLUSION ........................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*,
No. 117CV01149JDBJAY, 2020 WL 4937790 (W.D. Tenn. Aug. 24, 2020) ................ *passim*

*Alaska Wilderness League v. U.S. E.P.A.*,
727 F.3d 934 (9th Cir. 2013)........................................................................................5

*Am. Copper & Brass. v. Lake City Indus. Prod., Inc.*,
No. 1:09-CV-1162, 2013 WL 3654550 (W.D. Mich. July 12, 2013), *aff'd*, 757 F.3d 540 (6th Cir. 2014) ........................................................................................6, 12

*AT&T Commc'ns Sys. v. Pac. Bell*,
203 F.3d 1183 (9th Cir. 2000)......................................................................................13

*Bahr v. U.S. Envtl. Prot. Agency*,
836 F.3d 1218 (9th Cir. 2016)........................................................................................9

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988) ......................................................................................................14

*Canady v. Bridgecrest Acceptance Corp.*,
No. CV-19-04738-PHX-DWL, 2020 WL 5249263 (D. Ariz. Sept. 3, 2020)..........................15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................................4

*Clement v. Amscot Corp.*,
176 F. Supp. 2d 1292 (M.D. Fla. 2001) .........................................................................14

*Comm. To Save WEAM v. F.C.C.*,
808 F.2d 113 (D.C. Cir. 1986) ........................................................................................8

*Daisy. Inc. v. Mobile Mini. Inc.*,
No. 2:20-CV-17-FTM-38MRM, 2020 WL 5701756 (M.D. Fla. Sept. 24, 2020) ....................11

*Forsyth Mem'l Hosp., Inc. v. Sebelius*,
652 F.3d 42 (D.C. Cir. 2011) ........................................................................................14

*Foster v. City of Fresno.*,
392 F. Supp. 2d 1140 ....................................................................................................15

*Gorss Motels, Inc. v. Safemark Sys., LP*,
931 F.3d 1094 (11th Cir. 2019)........................................................................................9

*Gusman v. Comcast Corp.*,
No. 13CV1049-GPC DHB, 2014 WL 2115472 (S.D. Cal. May 21, 2014).............................14

*Indiana Bell Tel. Co. v. McCarty*,
362 F.3d 378 (7th Cir. 2004)....................................................................................8

*j2 Glob. Commc'ns, Inc. v. Protus IP Sols.*,
No. CV 06–00566, 2010 WL 9446806 (C.D. Cal. Oct. 1, 2010) ...........................................12

*j2 Glob. Commc'ns, Inc. v. Protus IP Sols*.,
No. CV0600566DDPAJWX, 2008 WL 11335051 (C.D. Cal. Jan. 14, 2008)...........................8

*Jamison v. First Credit Servs., Inc.*,
290 F.R.D. 92 (N.D. Ill. 2013)..................................................................................14

*Jordan v. Nationstar Mortg. LLC*,
No. 14-CV-00787-WHO, 2014 WL 5359000 (N.D. Cal. Oct. 20, 2014)................................14

*In re NOS Commc'ns*,
495 F.3d 1052 (9th Cir. 2007)..................................................................................14

*Levi v. Comcast Holdings Corp.*,
No. 13-CV-05604-JD, 2014 WL 12646043 (N.D. Cal. June 2, 2014) ....................................15

*Leyse v. Clear Channel Broad., Inc.*,
545 F. App'x 444 (6th Cir. 2013) ...............................................................................7

*Meyer v. Portfolio Recovery Assocs., LLC,*
707 F.3d 1036 (9th Cir. 2012)....................................................................................7

*N.B. Indus., Inc. v. Wells Fargo & Co*.,
465 F. App'x 640 (9th Cir. 2012) ...........................................................................6, 9

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
545 U.S. 967 (2005)................................................................................................13

*Putnam Family P'ship v. City of Yucaipa*,
673 F.3d 920 (9th Cir. 2012)................................................................................5, 6, 7

*Qwest Servs. Corp. v. F.C.C.*,
509 F.3d 531 (D.C. Cir. 2007) ..................................................................................14

*Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*,
788 F.3d 218 (6th Cir. 2015)....................................................................................10

*Sierra Club v. U.S. E.P.A.*,
671 F.3d 955 (9th Cir. 2012)......................................................................................9

*Silva v. U.S. Bancorp*.,
No. 5:10-CV-01854-JHN. 2011 WL 7096576. (C.D. Cal. Oct. 6, 2011) ................................15

*Skidmore v. Swift Co*.,
323 U.S. 134 (1944)...........................................................................................2, 5, 10

*US W. Commc'ns, Inc. v. Hamilton*,
224 F.3d 1049 (9th Cir. 2000), *as amended on reh'g* (Oct. 23, 2000) ....................................7, 8

*US W. Commc'ns, Inc. v. Jennings*,
304 F.3d 950 (9th Cir. 2002)........................................................................................1

*Whiteamire Clinic, P.A. Inc. v. Cartridge World N. Am., LLC*,
No. 1:16CV226, 2017 WL 561832 (N.D. Ohio Feb. 13, 2017)...............................................12

**Statutes and Regulations**

47 U.S.C. § 155(c) ........................................................................................8

47 U.S.C. § 227(a)(3).......................................................................................5

47 C.F.R. § 1.102(b)(1)....................................................................................8

**Other Authorities**

*In the Matter of AmeriFactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling, Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prot. Act of 2005*,
CG Docket Nos. 02-278, 05-338, 2019 WL 6712128 (F.C.C. Dec. 9, 2019) ................. *passim*

*In the Matter of Joseph T. Ryerson & Son. Inc. Petition for Declaratory Ruling Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
No. CG02-278, 2020 WL 5362216 (OHMSV Sept. 4, 2020) .......................................1, 11, 13

*In the Matter of Westfax, Inc. Petition for Consideration & Clarification*,
30 F.C.C. Rcd. 8620 (2015) ..........................................................................13

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
18 F.C.C. Rcd. 14014 (2003) . ...................................................................... *passim*

## INTRODUCTION

The material facts in this matter are undisputed. Plaintiff Sarbjit Dhesi ("Plaintiff") concedes that he did not receive the fax at issue on (or even own) a traditional fax machine, rather Plaintiff received the fax electronically as an attachment to an e-mail message via the service "OnlineFaxes.com." In its AmeriFactors Ruling, the Federal Communications Commission ("FCC") clarified that faxes received electronically via "online fax services" like that at issue here do not violate the Telephone Consumer Protection Act ("TCPA"). Circuit precedent obligates this Court to follow and apply that decision here.

Because the AmeriFactors Ruling is fatal to Plaintiff's TCPA claim, Plaintiff devotes much of his opposition brief to arguing that the FCC—the agency entrusted by Congress to interpret and enforce the TCPA—simply got it wrong. Indeed, Plaintiff's brief reads much like an appeal of the AmeriFactors Ruling itself rather than a response to Defendants' summary judgment motion. Even if this were an appropriate forum to relitigate the agency's decision—and it is not, for the reasons explained in Defendants' motion and below—the FCC has twice rejected the very same arguments Plaintiff advances here: first in the AmeriFactors Ruling itself and again in a subsequent ruling released last month. *See In the Matter of Joseph T. Ryerson & Son. Inc. Petition for Declaratory Ruling Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, No. CG02-278, 2020 WL 5362216 (OHMSV Sept. 4, 2020) ("*Ryerson*"). In any event, binding Circuit law *requires* the Court to adhere to the AmeriFactors Ruling. Under the Hobbs Act, 28 U.S.C. § 2341, *et seq.*, district courts lack jurisdiction to consider whether an agency properly interpreted a statute, such that all final orders of the FCC "*must be presumed valid*." *US W. Commc'ns, Inc. v. Jennings*, 304 F.3d 950, 958 n.2 (9th Cir. 2002) (emphasis added).

Plaintiff mostly ignores this precedent. In fact, he does not address the Hobbs Act at all until page 17 of his 25-page brief, despite the fact that it was Defendants' lead argument. This speaks volumes. And his primary response to this controlling authority is to argue that the Hobbs Act does not apply because the AmeriFactors Ruling is not a "final order," which is wrong as a matter of law. The AmeriFactors Ruling "fixed rights and obligations" of fax senders and therefore is a "final order" requiring deference. That is dispositive.

Plaintiff's other arguments are equally meritless. For example, Plaintiff argues that no deference is owed to the FCC's interpretation of the TCPA because the statute unambiguously defines "telephone facsimile machine." But the TCPA's definition of "telephone facsimile machine" is subject to multiple competing interpretations and thus by definition is ambiguous—as evidenced by, among other things, the fact that the "unambiguous" definition of this phrase that Plaintiff advances is precisely the opposite of what the FCC determined that phrase to mean in its AmeriFactors Ruling. In addition, Plaintiff argues that, to the extent deference is owed, it should be only *Skidmore* deference and applied to two earlier FCC determinations, rather than the AmeriFactors Ruling. Not so. The Hobbs Act controls, and even if it did not, *Chevron*, not *Skidmore*, would establish the standard of deference in this case because the FCC's Bureau of Consumer and Governmental Affairs ("Bureau") had authority to promulgate the AmeriFactors Ruling and acted pursuant to that authority. Moreover, no matter what level of deference the Court applies, the result would be the same because the Bureau's interpretation in the AmeriFactors Ruling is based on a reasoned, persuasive interpretation of the TCPA. Finally, Plaintiff argues that the AmeriFactors Ruling does not apply retroactively. Plaintiff is wrong again: the AmeriFactors Ruling merely clarifies the FCC's previous rulings rather than announces new law, and therefore it applies retroactively.

For these reasons and those set forth in Defendants' Motion, the Court should grant summary judgment for Defendants.

## ARGUMENT

### I. THE UNDISPUTED FACTS SHOW THAT PLAINTIFF RECEIVED THE FAX USING AN "ONLINE FAX SERVICE."

The threshold question for this Court is whether Plaintiff received the fax at issue using an "online fax service" as defined by the Bureau in the AmeriFactors Ruling. Mot. Ex. 1 (AmeriFactors Ruling) ¶ 2. He did, and the relevant facts are not in dispute. Plaintiff admits that he received the fax at issue via a service called "OnlineFaxes.com." Mot. at 6; Opp. at 1. He admits that OnlineFaxes.com consists of a collection of servers and software that digitally transmit faxes to customers. Mot. at 6; Opp. at 2, 4-5. He does not dispute that OnlineFaxes.com

uses its servers to accept incoming faxes and then holds those faxes in digital form on cloud-based servers for its customers to access in a digital format. Mot. at 6; *see also* Mot. Ex. 5 (Decl. of D. Lightman) ¶ 5; Mot. Ex. 6 (Dep. Tr. of D. Lightman) at 15:16-16:2. Plaintiff admits that he received the fax at issue in this litigation as a PDF attached to an e-mail. Mot. at 6; Opp. at 2. And he admits that the fax did not print automatically when he received it in his e-mail inbox. Mot. at 7. Plaintiff instead opened the e-mail message, reviewed the attachment, and placed it in an e-mail folder. Opp. at 2.

Based on these uncontested facts, it is clear that OnlineFaxes.com is an "online fax service" within the meaning of the AmeriFactors Ruling—it is a "a cloud-based service consisting of a fax server or similar device that is used to send or receive documents, images and/or electronic files in digital format over telecommunications facilities that allows users to access 'faxes' the same way that they do email: by logging into a server over the Internet or by receiving a pdf attachment [as] an email." AmeriFactors Ruling ¶ 2 (internal quotations omitted). Plaintiff tries to sidestep these facts, Opp. at 3-5, highlighting instead his expert's report focused on highly technical "facsimile transmission standards" and the number of successful fax transmissions in this case. *Id.* at 3-5. But this report is irrelevant: its focus was a review of the transmission logs provided by the entity who *sent* the fax, Opp. Ex. B, at ¶¶ 1, 2, 10, not the entity who *received* the fax, namely, OnlineFaxes.com. Plaintiff's expert's analysis therefore does not address whether Online Faxes.com is "a cloud-based service" that "is used to send or receive documents, images and/or electronic files in digital format . . . that allows users to "access 'faxes' the same way that they do email[.]" AmeriFactors Ruling ¶ 2. In fact, Plaintiff's expert advanced similar arguments before the Bureau, which it rejected in the AmeriFactors Ruling itself. *Id.* ¶ 7.

Plaintiff also suggests that OnlineFaxes.com has the *capacity* to print faxes, and that this means OnlineFaxes.com is not an "online fax service." Opp. at 4-6, 25. This is wrong both on the law and the facts. As to the law, the AmeriFactors Ruling focused on "online fax services" not causing the same harms as traditional faxes because the paper and ink of the recipient is only used if they choose to print. AmeriFactors Ruling ¶ 13. The FCC did not carve out services where customers receive faxes that are "essentially sent as e-mail over the Internet" but that *could*

*be* printed if the recipient chooses to print them using a separate printing device. This issue is therefore not material to the summary judgment inquiry.

As for the facts, it is undisputed that OnlineFaxes.com does not and *cannot* print the faxes it transmits across its system. Mot. at 7; *see also* Mot. Ex. 5 (Decl. of D. Lightman) ¶¶ 8-10; Mot. Ex. 6 (Dep. Tr. of D. Lightman) at 29:3-33:8. An employee of OnlineFaxes.com, David Lightman, detailed in his deposition testimony three reasons why OnlineFaxes.com cannot print faxes it processes for its customers: (1) some of its servers are virtual and a printer cannot be connected, Mot. Ex. 6 (Dep. Tr. of D. Lightman) at 29:15-29:24; 31:16-31-19; (2) other servers are stored in data centers where fibrous materials (such as paper) are not permitted, *id.* at 29:25-30:4; 32:4-32:7; and (3) there is no software for the servers that would facilitate printing (even if the physical barriers were removed). *Id.* at 29:15-33:8; 30:5-30:8; 32:8-32:11. Mr. Lightman further explained that there is no way for the server that receives faxes to print remotely because the requisite software to allow printing does not exist. *Id.* at 32:15-33-8. Plaintiff offers no contrary evidence and thus fails to carry his burden in opposing summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (moving party is entitled to summary judgment when nonmoving party failed to make "a sufficient showing on an essential element" of the case where the nonmoving party has the burden of proof). To say that OnlineFaxes.com has the "capacity" to print because software *could* be invented is akin to saying that humanity has the capacity to fly because such technology *could* be designed. There simply is no genuine dispute on this issue.

Try as he might, Plaintiff cannot genuinely contest that he received the fax at issue via an "online fax service" precisely like that described in the AmeriFactors Ruling. Thus, the only question before the Court is a legal one: whether the Court must defer to the AmeriFactors decision. As explained below, the answer to that question is yes.

## II. THIS COURT SHOULD DEFER TO THE AMERIFACTORS RULING AND HOLD THAT PLAINTIFF'S CLAIM IS OUTSIDE THE SCOPE OF THE TCPA.

In its AmeriFactors Ruling, the Bureau interpreted the phrase "telephone facsimile machine" to exclude services that allow customers to "effectively receive faxes as e-mails over the Internet." AmeriFactors Ruling ¶ 8. Plaintiff argues that this Court need not defer to this

determination because the phrase "telephone facsimile machine" unambiguously means equipment that has the capacity to "transcrib[e] text or images (or both) from an electronic signal received over a regular telephone line onto paper," Opp. at 5, and thus "online fax services" could be "telephone facsimile machines." According to Plaintiff, because this phrase is unambiguous, the Court must simply apply the plain language of the statute, rather than adhering to the FCC's guidance. *Id.* at 2-6. Plaintiff alternatively suggests that the Court should at most apply *Skidmore* deference to the 2003 Order and WestFax Order. *Id.* at 19-23.

For the reasons explained below, both of these arguments fail. The relevant statutory language in the TCPA is ambiguous. As such, the Court is bound to follow the AmeriFactors Ruling by the Hobbs Act or, alternatively, by *Chevron* deference, and should hold that Plaintiff's Complaint falls outside the reach of the TCPA.

### A. The AmeriFactors Ruling Is Controlling Because The Relevant Statutory Terms Are Ambiguous.

If the term "telephone facsimile machine" in the TCPA is unambiguous, this Court must apply the definition used in the statute (as Plaintiff argues). *Alaska Wilderness League v. U.S. E.P.A.*, 727 F.3d 934, 937-38 (9th Cir. 2013). But if the term is ambiguous, then deference to the FCC's interpretation is appropriate (as Defendants contend). *Putnam Family P'ship v. City of Yucaipa*, 673 F.3d 920, 928 (9th Cir. 2012). Here, "telephone facsimile machine" is plainly ambiguous, and that ambiguity requires deference to the Bureau's interpretation is required.

The TCPA broadly defines "telephone facsimile machine," but it does not define any of the underlying terms in a way that allows for an unambiguous reading of the statute. According to the TCPA, "telephone facsimile machine" means "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3). But the TCPA does not, in turn, define the critical words in this definition—i.e., "equipment," "capacity," and "regular telephone line." Those terms are central to this dispute because they control (in part) whether online faxes are prohibited by the TCPA, but Congress has never defined what they mean. *See Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, No. 117CV01149JDBJAY, 2020 WL 4937790, at *5 (W.D. Tenn. Aug.

24, 2020) ("Congress did not define 'equipment' or any of the other terms used in the definition of a telephone facsimile machine, and the ordinary definitions of those terms do not shed light on whether an online fax service is included in that definition."); *see also Am. Copper & Brass v. Lake City Indus. Prod., Inc.*, No. 1:09-CV-1162, 2013 WL 3654550, at *5 (W.D. Mich. July 12, 2013), *aff'd*, 757 F.3d 540 (6th Cir. 2014) (observing that the TCPA does not define "regular telephone line"). As a result, the term "telephone facsimile machine" is facially ambiguous and subject to differing interpretations by courts, policymakers, and litigants alike.

Indeed, the only court to consider the Bureau's interpretation in the AmeriFactors Ruling since it was released concluded that the absence of a precise definition for each of those terms makes the phrase "telephone facsimile machine" susceptible to competing interpretations. *See Advanced Rehab*, 2020 WL 4937790, at *5. In *Advanced Rehab*, the court considered whether to modify a previously certified class definition to remove faxes sent to "online fax services" from the class because of the AmeriFactors Ruling. *Id.* at *3. The court concluded that it must modify the class definition because the term "telephone facsimile machine" is ambiguous, *id.* at *5, meaning deference is required, and that the Bureau's construction was "reasonable" and the Court was therefore "required to accept it." *Id.* at *8; *see also id.* at *6-*8. So too here. As *Advanced Rehab* held, "telephone facsimile machine" is ambiguous because it is susceptible to competing interpretations. After all, the fact that the Bureau—the arm of the FCC tasked with interpreting the TCPA—interprets the statute differently than Plaintiff itself demonstrates that the text is ambiguous. *See id.*; *see also Putnam Family P'ship*, 673 F.3d at 928.[1]

Plaintiff does not contest any of this. Instead, he points to the Ninth Circuit's definition of "capacity" from a different provision of the TCPA to suggest that a telephone facsimile machine must only be capable of printing faxes, not that it actually do it, to qualify as a "telephone

---

[1] Plaintiff relies on *Medco Health Sols.* to argue that there is a circuit split regarding whether courts must defer to the FCC's guidance with respect to interpreting the TCPA. Opp. at 20. But this question has been expressly resolved in this Circuit; the Ninth Circuit has repeatedly held that courts "must turn to the interpretation of [TCPA] promulgated by the Federal Communications Commission, the agency to which the Act explicitly delegates interpretive authority." *N.B. Indus., Inc. v. Wells Fargo & Co.*, 465 F. App'x 640, 642 (9th Cir. 2012).

facsimile machine."[2] Opp. at 3 (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)). Based on this and purported "expert" testimony, Plaintiff concludes the statute is unambiguous. But that ignores everything above, and Plaintiff has no answer for the ambiguity inherent in any of the other key terms at issue, such as "equipment" and "regular telephone line."

Because the statute is ambiguous, this Court cannot simply apply the plain language of the TCPA; it must defer to the Bureau's determination. *Putnam Family P'ship*, 673 F.3d at 928.

**B. The Hobbs Act Applies To The AmeriFactors Ruling And Is Dispositive.**

As explained in our opening brief, Mot. at 9-11, the Court is bound to adhere to the AmeriFactors Ruling by operation of the Hobbs Act under the controlling law of this Circuit. Plaintiff largely ignores Ninth Circuit precedent requiring application of the Hobbs Act, failing to reference the statute at all until nearly two-thirds of the way into his brief. And when he finally does address it, Plaintiff argues that the AmeriFactors Ruling is not a "final order" but rather merely an "interpretive rule," and thus that the Hobbs Act does not apply. Opp. at 18-19. This argument, however, is squarely foreclosed by binding precedent. The Ninth Circuit has expressly held that "[t]he Hobbs Act itself contains no exception for 'interpretive' rules, and case law does not create one. What scant case law there is suggests that 'final orders' include both interpretive and legislative orders." *US W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1055 (9th Cir. 2000), *as amended on reh'g* (Oct. 23, 2000); *see also Leyse v. Clear Channel Broad., Inc.*, 545 F. App'x 444, 455 (6th Cir. 2013) (rejecting argument that 2003 order was not subject to Hobbs Act because it was "interpretive). Indeed, the amicus brief Plaintiff relies on acknowledges as much. Opp. Ex. D at 14 ("Accordingly, courts have in appropriate cases found final FCC orders that are interpretive in character to be subject to Hobbs Act review.").

In deciding whether the Hobbs Act applies, the relevant question is whether the

[2] Plaintiff relies on the Ninth Circuit's interpretation of "capacity" in the autodialer provision of the TCPA in arguing it should apply to the faxing provision. Opp. at 3-4. While Defendants disagree with this extension of the Ninth Circuit's interpretation of "capacity," that is outside the scope of this case.

AmeriFactors Ruling "impose[d] an obligation, den[ied] a right, or fix[ed] some legal relationship as a consummation of the administrative process." *Hamilton*, 224 F.3d at 1054-55. It did, and the AmeriFactors Ruling thus is a final order to which this Court must defer. *Id.* By clarifying that "online fax services" are not "telephone facsimile machines," the AmeriFactors Ruling undoubtedly "determined rights and obligations" of fax senders. *j2 Glob. Commc'ns, Inc. v. Protus IP Sols*., No. CV0600566DDPAJWX, 2008 WL 11335051, at *2 (C.D. Cal. Jan. 14, 2008) (finding 2003 Order was "final order" because FCC's decision that fax servers are "telephone facsimile machines" "determined rights and obligations"); *see also* Mot. at 9-10. Further, as Defendants explained in their motion, Mot. at 10, non-hearing or interlocutory actions, like the one at issue here, are immediately effective upon release under the applicable regulations. *See* 47 C.F.R. § 1.102(b)(1); *Comm. To Save WEAM v. F.C.C.*, 808 F.2d 113, 119 (D.C. Cir. 1986). And in this instance, the Ruling itself stated in no uncertain terms that it was effective immediately upon issuance. AmeriFactors Ruling ¶ 18 ("IT IS FURTHER ORDERED that this Declaratory Ruling shall be effective upon release."). Plaintiff ignores all of these arguments entirely. Deference under the Hobbs Act is therefore required. *See also* Mot. 9-11.

That the Bureau rather than the full Commission issued the AmeriFactors Ruling does not change this conclusion. As Defendants have explained, decisions made by the Bureau pursuant to validly delegated authority are entitled to the same level of deference as those made by the Commission. *Id.* at 10-11. Plaintiff distorts Defendants' argument, suggesting that Defendants incorrectly argued that action pursuant to delegated authority converts the AmeriFactors Ruling into a final order. Opp. at 18. Not so. Rather, what Defendants have argued is that because the Bureau acted pursuant to delegated authority, then the AmeriFactors Ruling must receive the same deference that a similarly situated decision of the full Commission would receive. Mot. at 10-11; *see also* 47 U.S.C. § 155(c)(3); *Indiana Bell Tel. Co. v. McCarty*, 362 F.3d 378, 387 (7th Cir. 2004) (observing that when Congress has expressly permitted delegation and the agency delegates authority "'the decision of the subdivision is entitled to the same degree of deference as if it were made by the agency itself.'") (citation omitted). Moreover, courts routinely defer to orders of the Bureau while Applications for Review are pending—another argument Defendants

made in their Motion and that Plaintiff ignores. *See* Mot. at 11; *see also Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1104 (11th Cir. 2019) (deferring to the Bureau's elimination of the solicited-fax rule pursuant to the Hobbs Act even though application for review was pending).

Consequently, the Hobbs Act applies to the AmeriFactors Ruling. And under the Hobbs Act and binding Ninth Circuit law, the Court has no discretion to depart from the AmeriFactors Ruling; it must defer to the FCC's decision that online fax services fall outside the scope of the TCPA. *See* Mot. at 9-11. The Court therefore should enter summary judgment for Defendants.

**C. In The Alternative, *Chevron* Deference Compels The Same Result.**

Even if the Court were to find that the Hobbs Act does not apply, *Chevron* deference to the Bureau's decision remains appropriate and compels the same result. Plaintiff's arguments to the contrary, Opp. at 20-23, all fail as a matter of law.

Plaintiff first argues (once again) that no deference is required because the term "telephone facsimile machine" is unambiguous. *Id.* at 21. That argument fails for the reasons set forth above. *See supra* pp. 5-6.

Plaintiff next argues (also again) that no deference is required because the AmeriFactors Ruling is an interpretive rule. Opp. at 20-21. But (yet again) that formalistic distinction is neither an available argument in this Circuit nor the appropriate question. Instead, *Chevron* deference is appropriate when "the agency can demonstrate that it has the general power to make rules carrying the force of law and that the challenged action was taken in the exercise of that authority." *Sierra Club v. U.S. E.P.A.*, 671 F.3d 955, 962 (9th Cir. 2012) (quoting *The Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1067 (9th Cir. 2003)) (internal quotations omitted); *see also Bahr v. U.S. Envtl. Prot. Agency*, 836 F.3d 1218, 1230 (9th Cir. 2016). The Ninth Circuit has confirmed that the FCC has the power to interpret the TCPA and to promulgate interpretations of the statute. *N.B. Indus.*, 465 F. App'x at 642 (courts "must turn to the interpretation of [TCPA] promulgated by the Federal Communications Commission, the agency to which the [TCPA] explicitly delegates interpretive authority"). And the only Court to consider whether *Chevron* deference to the AmeriFactors Ruling was appropriate concluded it

that it was.[3] *Advanced Rehab*, 2020 WL 4937790, at *7. Plaintiff fails to meaningfully distinguish *Advanced Rehab*, arguing primarily that it disagrees with the court's decision to apply the AmeriFactors Ruling. Opp. at 20 n.1. The AmeriFactors Ruling thus is subject, in the alternative, to *Chevron* deference, which further warrants an entry of summary judgment for Defendants. *See* Mot. at 12-14.

There is no merit to Plaintiff's additional argument that if any deference should be afforded, then it should be only *Skidmore* deference and that this limited deference should apply only to the 2003 Order and the WestFax Order. Opp. at 21-23. For the reasons set forth above and in Defendants' Motion, Mot. at 9-14, the Hobbs Act (or *Chevron*) should govern. But even assuming *arguendo* that only *Skidmore* deference applied, the Court still should defer to the AmeriFactors Ruling. As discussed below, the AmeriFactors Ruling contemplated both the 2003 Order and the WestFax Order and built off those precedents to interpret the new technology at hand. *See infra* § III.A.; AmeriFactors Ruling ¶¶ 5, 11, 13, 15. And the decision was made after a public comment period, which allowed the Bureau to consider the views of any interested parties (including Plaintiff's counsel and expert). *Id.* ¶ 7. It therefore has the "power to persuade" and deserves deference. *Skidmore v. Swift Co.*, 323 U.S. 134, 140 (1944) ("The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").

Lastly, Plaintiff argues that the TCPA is a remedial statute "intended to protect consumers" and that this somehow means the Court should not apply the FCC's determination. Opp. at 23; *see also id.* at 14. A remedial purpose, however, is not a basis to interpret a statute "more broadly than its language and the statutory scheme reasonably permit." *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 224 (6th Cir. 2015). Applying Plaintiff's interpretation would construe the TCPA to address conduct and harms that the it was not intended

---

[3] The defendant in *Advanced Rehab* waived any argument concerning whether the Hobbs Act (rather than *Chevron* deference) applied, and thus the Court did not address it. *Advanced Rehab*, 2020 WL 4937790, at *3.

to cover. The only "harm" Plaintiff can claim here—the loss of 30 to 60 seconds—is not a harm that the TCPA was aimed at ameliorating. Opp. Ex. A (Decl. of S. Dhesi) ¶ 7. To the contrary, the FCC has twice examined whether the TCPA is aimed at protecting consumers from wasted time, and it has twice concluded that it does not. AmeriFactors Ruling ¶ 14; *Ryerson* ¶ 16.[4]

## III. PLAINTIFF'S REMAINING ARGUMENTS ARE WRONG.

The AmeriFactors Ruling conclusively resolves this case in favor of Defendants because OnlineFaxes.com is an "online fax service," and the Hobbs Act requires the Court to adhere to the FCC's guidance that online faxes are not covered by the TCPA. Plaintiff nonetheless attempts to evade application of the AmeriFactors Ruling through two final avenues, each of which is flawed. First, he argues that the AmeriFactors Ruling departs from earlier FCC decisions and thus the Court should ignore the decision. Opp. at 6-14. Second, Plaintiff argues that the AmeriFactors Ruling is a change in the law and therefore does not apply retroactively to the fax at issue. *Id*. at 15-17. For the reasons explained below, both of these arguments fail as a matter of law.

### A. The AmeriFactors Ruling Is Consistent With Previous FCC Rulings And Governs This Case.

Plaintiff spends eight pages of his brief arguing that two earlier FCC decisions—the 2003 Order and the WestFax Order—should govern this case instead of the AmeriFactors Ruling. Opp. at 6-14. According to Plaintiff, because the AmeriFactors Ruling ignored and departed from these previous orders, the Court owes no deference to the Ruling. Plaintiff does not cite any authority for this proposition. That is not surprising; there is no carve out in the Hobbs Act for agency decisions that depart from previous rulings. Plaintiff's argument is thus legally wrong.

It also is wrong as a factual matter. Both the 2003 and WestFax Orders were squarely

[4] This argument has been further rejected by the Middle District of Florida, which recently found that lost time spent reviewing a fax received as a PDF attached to an e-mail does not satisfy Article III's injury-in-fact requirement. *Daisy. Inc. v. Mobile Mini. Inc.*, No. 2:20-CV-17-FTM-38MRM, 2020 WL 5701756, at *7 (M.D. Fla. Sept. 24, 2020). The court analyzed both the Congressional findings and legislative history, concluding that "it does not show Congress sought to protect against wasted time spent reviewing faxes received over e-mail" and that it was " clear Congress did not view one wasted minute spent reviewing a junk fax received through e-mail as a concrete injury." *Id.* at *5, *7.

addressed and distinguished by the Bureau in its AmeriFactors Ruling, as explained in more detail below. Nor did the AmeriFactors Ruling depart from the standards set forth in these prior orders. Rather, it builds off of and applies them to address different technology.

**The 2003 Order**. The FCC's 2003 Order addressed faxes sent to "personal computers equipped with, or attached to, modems and to computerized fax servers" and found that such technology is subject to the TCPA. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14132-34 (2003) ("2003 Order"). But, as the AmeriFactors Ruling explains, the 2003 Order also clarified that the TCPA's prohibition does not extend to facsimile messages "sent as email over the Internet." AmeriFactors Ruling ¶ 5. The technology at issue in the 2003 Order also involved "equipment [that] could transcribe a fax onto paper." *Id.* The AmeriFactors Ruling clarified that, unlike the personal computers with fax servers described in the 2003 Order, "online fax services" effectively operated as "e-mail over the Internet," *id.* ¶ 8; and that faxes sent "via an attachment that the consumer can delete without printing are effectively the same as 'email sent over the Internet,'" *id.* ¶ 11.[5]

**The WestFax Order**. The WestFax Order addressed faxes where the "recipient computers are attached to fax servers or services that convert the fax into a format that is attached to an email received by the computer," concluding that such faxes fall within the scope of the TCPA. *In the Matter of Westfax, Inc. Petition for Consideration & Clarification*, 30 F.C.C. Rcd. 8620, 8623 (2015) ("Westfax Order"). While Plaintiff argues that the Bureau ignored the WestFax Order in its AmeriFactors Ruling, Opp. at 12, he elsewhere acknowledges that the AmeriFactors Ruling expressly addressed and "attempt[ed] to distinguish the WestFax" Order.

---

[5] Plaintiff also argues that the 2003 Order shows that "regardless how an end-user views a fax," a fax sent by e-mail is still sent to a telephone facsimile machine under the TCPA. Opp. at 13. But that is true only if the technology on which Plaintiff receives the fax is actually a telephone facsimile machine. OnlineFaxes.com is plainly not for the reasons set forth above, and Plaintiff's argument to the contrary is premised on pre-AmeriFactors cases addressing technologies described in the 2003 Order, *see Am. Copper & Brass, Inc.*, 2013 WL 3654550, at *5, or whether plaintiffs had standing to sue, *Whiteamire Clinic, P.A. Inc. v. Cartridge World N. Am., LLC*, No. 1:16CV226, 2017 WL 561832, at *3 (N.D. Ohio Feb. 13, 2017); *j2 Glob. Commc'ns, Inc. v. Protus IP Sols.*, No. CV 06–00566, 2010 WL 9446806, at *7 (C.D. Cal. Oct. 1, 2010). These cases are irrelevant to the question of whether the AmeriFactors Ruling applies here.

*Id.* at 13. As the Bureau explained, the WestFax Order was premised on the fax being sent to "a computer with an attached fax modem that had the capacity to print the fax as required by statute," which "online fax services" do not.[6] AmeriFactors Ruling ¶ 15. And since the AmeriFactors Ruling, the Bureau has considered this issue again and affirmed that the technology at issue in the WestFax Order is distinct from that in the AmeriFactors Ruling. In *Ryerson*, the Bureau reiterated that (i) the WestFax Order was premised on the equipment having the capacity to print faxes, and (ii) "[i]f such equipment lacks the capacity to print a fax, it does not meet the definition of a 'telephone facsimile machine.'" *Ryerson* ¶ 6 n.11.

As the court in *Advanced Rehab* recently held, the Bureau's AmeriFactors Ruling adequately distinguished the WestFax Order and was "not inconsistent with the 2003 Order." *See Advanced Rehab*, 2020 WL 4937790, at *8. We agree. Plaintiff's argument that the AmeriFactors Order ignored earlier FCC precedent is simply wrong.[7]

**B. The AmeriFactors Ruling Applies Retroactively.**

Plaintiff's final attempt to avoid application of the AmeriFactors Ruling is to argue that, despite the Bureau's own pronouncement that it was merely clarifying existing FCC guidance, AmeriFactors Ruling ¶¶ 8, 11, the Bureau's decision is an "outright reversal" of the 2003 and WestFax Orders and thus should not apply retroactively. Opp. at 15-16. This is simply incorrect. As set forth above, the AmeriFactors Ruling merely builds off of and clarifies aspects of those earlier orders. Clarifications of law, like that at issue here, are appropriately applied retroactively. *See AT&T Commc'ns Sys. v. Pac. Bell*, 203 F.3d 1183, 1187 (9th Cir. 2000) ("Because the regulation promulgated by the FCC merely interprets the substantive provisions of the Act, it does

---

[6] Not only does OnlineFaxes.com not have the capacity to print, but it also does not include a "fax server" like the technology in the 2003 Order and WestFax Order. Mot. Ex. 6 (Dep. Tr. of D. Lightman) at 11:1-3, 20:10-25. Instead, it uses a proprietary set of software to receive and then digitally transmit the facsimile to the customer, *id.* at 13:7-14:23.

[7] Furthermore, even if the AmeriFactors Ruling were a departure from previous agency policy (it is not), and even if the Court did not apply the Hobbs Act (it should), the decision still would be entitled to deference under *Chevron*. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (observing that "initial agency interpretation is not instantly carved in stone" and that deference could be afforded to agency decisions that amount to a change in policy).

not present retroactivity concerns."). Indeed, the only court to consider the application of the AmeriFactors Ruling applied it retroactively. *Advanced Rehab*, 2020 WL 4937790, at *8.

Plaintiff's citation to *Clement* and *Bowen* does not change this result. Opp. at 15-17. In *Clement v. Amscot Corp*., unlike here, the agency had never previously addressed the issue at hand, so the agency's commentary was undoubtedly a new substantive pronouncement. 176 F. Supp. 2d 1292, 1300-01 (M.D. Fla. 2001). And in *Bowen v. Georgetown Univ. Hosp*., the court was focused on establishing a framework for administrative rulemaking. 488 U.S. 204, 208 (1988). Here, by contrast, the Bureau's decision was made pursuant to its adjudication authority, not its rulemaking authority.[8] *See Qwest Servs. Corp. v. F.C.C*., 509 F.3d 531, 535-36 (D.C. Cir. 2007). As another court in this District has explained, clarifications made during adjudications do not present the same retroactivity concerns present in *Bowen*.[9] *Jordan v. Nationstar Mortg. LLC*, No. 14-CV-00787-WHO, 2014 WL 5359000, at *12 n.2 (N.D. Cal. Oct. 20, 2014) ("[R]egulations promulgated by the FCC that merely interpret provisions of an act do not present retroactivity concerns."); *Gusman v. Comcast Corp*., No. 13CV1049-GPC DHB, 2014 WL 2115472, at *4 (S.D. Cal. May 21, 2014) (noting that "a clarification of a regulation does not raise issues about retroactivity"); *see also* Mot. 8-9.

Because the AmeriFactors Ruling was a clarification of law issued during an adjudication, it should be applied retroactively. *Id.*

## IV. IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS CASE BASED ON THE DOCTRINE OF PRIMARY JURISDICTION.

In the event this Court is inclined to wait for the FCC's ruling on the pending Application

---

[8] Plaintiff suggests that at least one judge on the D.C. Circuit has criticized the reasoning in *Qwest* as "violat[ing] the precept of *Bowen*." Opp. at 16-17. Even if the views of a single dissenting judge were somehow relevant, Plaintiff's characterization of those views is incorrect. Judge Brown merely cautioned against eroding the rule between rulemaking and adjudication, while observing that "the presumption in favor of retroactive adjudication serves a valuable purpose." *Forsyth Mem'l Hosp., Inc. v. Sebelius*, 652 F.3d 42, 43 (D.C. Cir. 2011) (Brown, J., dissenting).

[9] For that reason, both *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013) and *In re NOS Commc'ns*, 495 F.3d 1052 (9th Cir. 2007) are also inapplicable. In *Jamison*, the court refused to stay a case pending an FCC decision because the petition at issue sought a change in the law. 290 F.R.D. at 102 n.5; *In re NOS Commc'ns* would have imposed new Truth–in–Billing duties that could not be retroactively applied to bills that had already been sent. 495 F.3d at 1062.

for Review of the AmeriFactors Ruling, the Court should stay this case pending that ruling based on the doctrine of primary jurisdiction. *See* Mot. at 14-15. Plaintiff does not address this argument, and thus waives any response to it. *See Foster v. City of Fresno*, 392 F. Supp. 2d 1140. 1147 n.7 (E.D. Cal. 2005); *Silva v. U.S. Bancorp*., No. 5:10-CV-01854-JHN. 2011 WL 7096576. at *3 (C.D. Cal. Oct. 6, 2011). Instead, Plaintiff argues that a stay is inappropriate under the *Lockyer* test, which has nothing to do with the doctrine of primary jurisdiction and instead governs when the Court exercises its inherent discretion to stay. Opp. at 24-25. But Defendants did not seek a stay under this Court's inherent authority.[10] Rather, as Defendants argued, if the Court is inclined to wait for a decision from the full FCC, then a stay is appropriate because whether OnlineFaxes.com is an "online fax service" is a threshold legal issue that must be addressed in this matter, and Congress gave the FCC jurisdiction to interpret and enforce the TCPA. *See* Mot. at 14-15; *see also* Mot. to Stay, Dkt. 76.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening memorandum, Defendants respectfully request that the Court find that the fax at issue did not violate the TCPA as a matter of law and enter summary judgment for Defendants. In the alternative, Defendants request that the Court stay the case pending the FCC's resolution of the Application for Review of the AmeriFactors Ruling.

---

[10] Even so, a stay would be appropriate under the Court's inherent authority. A stay would not be futile: the AmeriFactors Ruling is squarely relevant to the issues before this Court, requires deference under the Hobbs Act, and aligns with the 2003 Order and WestFax Order. There is no risk of evidence dissipating if a stay is granted. Plaintiff has taken significant discovery from both Defendants and third-parties, including deposing two of Defendants' employees, and Defendants have substantially completed their document productions. Defendants also, of course, remain under their obligation to preserve documents. *See Levi v. Comcast Holdings Corp.*, No. 13-CV-05604-JD, 2014 WL 12646043, at *3 (N.D. Cal. June 2, 2014) (finding plaintiff did not face prejudice when defendant was obligated to preserve documents). By contrast, Defendants would suffer significant hardship if they were required to continue litigating a case while waiting for the full FCC to affirm the AmeriFactors Ruling. *See Canady v. Bridgecrest Acceptance Corp*., No. CV-19-04738-PHX-DWL, 2020 WL 5249263, at *4 (D. Ariz. Sept. 3, 2020).

Dated: October 16, 2020

HOGAN LOVELLS US LLP

By: */s/ Kathryn M. Ali*

Adam K. Levin (admitted *pro hac vice*)
adam.levin@hoganlovells.com
Kathryn M. Ali (Bar No. 282042)
kathryn.ali@hoganlovells.com
Kaitlyn A. Golden (admitted *pro hac vice*)
kaitlyn.golden@hoganlovells.com
HOGAN LOVELLS US LLP
555 Thirteenth Street. NW
Washington, DC 20004
(202) 637-5600
(202) 637-5910 (fax)

Helen Trac
HOGAN LOVELLS US LLP
3 Embarcadero Center
Suite 1500
San Francisco, CA 94111
(415) 374-2300
(415) 374-2499 (fax)

*Attorneys for Defendants*