# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCOMA CHIROPRACTIC, P.A.,
WILLIAM P. GRESS and
FLORENCE MUSSAT M.D., S.C., a
Florida corporation, individually and
as the representative of a class of
similarly-situated persons,

       Plaintiffs,

v.                                                                    Case No.:  2:16-cv-41-FtM-66MRM

MASTERCARD INTERNATIONAL
INC.,


       Defendant

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiffs' Amended Motion for Class

Certification, filed on March 13, 2020.  (Doc. 159).  This motion follows a stay

issued in this case pending a decision by the Federal Communications Commission

("FCC")[1] on a "Petition for Expedited Declaratory Ruling of AmeriFactors

---

[1] Before the filing of the motion *sub judice*, both this Court and the parties had referred to the AmeriFactors Petition as pending before the "FCC."  (*See* Doc. 145; Doc. 149; Doc. 152; Doc. 156).  It is undisputed, however, that the Consumer and Governmental Affairs Bureau, acting on delegated authority from the FCC, issued the ruling on the AmeriFactors Petition, not the FCC directly.  (Doc. 159 at 21; Doc. 162 at 18).

Financial Group, LLC" ("AmeriFactors Petition") (Doc. 152 at 12-13).[2]  On January

1, 2020, this Court lifted the stay following a December 9, 2019 decision on the

AmeriFactors Petition.  (Doc. 156 at 1-2).

On May 27, 2020, Defendant[3] filed a response in opposition to Plaintiffs'

motion (Doc. 162).  On June 17, 2020, Plaintiffs filed a reply (Doc. 167), and on July

8, 2020, Defendant filed a sur-reply (Doc. 168).  Following this extensive and

voluminous briefing, the parties also filed Notices of Supplemental Authority.

(Docs. 170; 171).  The motion is ripe for review.  For the reasons set forth below, the

Undersigned recommends that Plaintiffs' Amended Motion for Class Certification

(Doc. 159) be **DENIED**.

## I.      Background

The complex nature of this case warrants review of the relevant procedural

history.

On January 25, 2016, Plaintiff Scoma Chiropractic, P.A. ("Scoma"),

individually and as the representative of a class of similarly situated persons, filed a

Class Action Complaint against Defendants Dental Equities, LLC ("Dental

Equities") and John Does 1-10 under the Telephone Consumer Protection Act of

1991 ("TCPA"), as amended by the Junk Fax Prevention Act of 2005 ("JFPA").

---

[2] Unless otherwise specified, pinpoint citations for documents filed in CM/ECF refer to the page number in the CM/ECF legend at the top of the page, not the pagination of the document itself.

[3] As discussed below, Mastercard International Incorporated is the sole remaining Defendant in this action and will, therefore, be referred to as "Defendant."

(Doc. 1 at 1-3). On February 24, 2016, Plaintiff filed a First Amended Class Action Complaint adding First Arkansas Bank & Trust ("First Arkansas Bank") as a Defendant. (Doc. 8). On April 29, 2016, Plaintiffs filed a Second Amended Class Action Complaint, adding Florence Mussat, M.D., S.C. ("Mussat") and Dr. William P. Gress ("Dr. Gress") as Plaintiffs. (Doc. 38). On September 26, 2016, Plaintiffs filed the Third Amended Class Action Complaint—which is the operative pleading for purposes of this motion—adding MasterCard International Incorporated as a Defendant. (Doc. 55).

On February 4, 2017, MasterCard filed its Amended Answer incorporating crossclaims against both Dental Equities and First Arkansas Bank and a third-party claim against Peer Equities, LLC ("Peer Equities"). (Doc. 87). On April 21, 2017, MasterCard filed a Motion for Clerk's Default against Dental Equities and Peer Equities, (Doc. 105), and this Court granted the motion on May 10, 2017, (Doc. 108). On June 8, 2017, MasterCard voluntarily dismissed its crossclaim against First Arkansas Bank. (Doc. 116). On July 31, 2017, Plaintiffs filed a Stipulated Notice of Dismissal with prejudice against First Arkansas Bank, (Doc. 119), and the Court dismissed First Arkansas Bank on August 1, 2017, (Doc. 120).

On May 14, 2018, Plaintiffs filed their first Motion for Class Certification. (Doc. 146). On May 11, 2018, however, Defendant moved to stay the action. (Doc. 145 at 1). On June 1, 2018, this Court granted Defendant's motion to stay and denied without prejudice Plaintiffs' motion for class certification. (Doc. 152 at 12-13).

The Court noted in its Order granting the stay that Defendant moved to stay the proceedings under the primary jurisdiction doctrine, (*id.* at 3), which allows a court to "dismiss or *stay an action* pending a resolution of some portion of the actions by an administrative agency," (*id.* at 7-8 (emphasis added; citing *Smith v. GTE Corp.*, 236 F.3d 1292, 1298 n.3 (11th Cir. 2001))). The Court explained that the justifications for the primary jurisdiction doctrine are twofold: "(1) the expertise of the agency deferred to; and (2) the need for uniform interpretation of a statute or regulation." (*Id.* at 8 (citing *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000))).

Additionally, the Court observed that "[t]he AmeriFactors Petition ask[ed] the FCC to examine the state of [fax] technology today and issue a declaratory ruling that the TCPA does not apply to faxes sent or received digitally via an online [fax] service, or on a device other than a" telephone fax machine. (*Id.* at 7). With this in mind, this Court explained that:

> Deferring to the FCC would advance the basic purpose of the [primary jurisdiction] doctrine because the specialized knowledge of the FCC is needed to answer the questions before the Court and deferral is necessary for a uniform interpretation of the statutory questions at issue. Whether [telephone fax machines] encompass online fax services is a matter of defining a technical term and Congress has explicitly tasked the FCC with prescribing regulations to implement the requirements of the TCPA, including the subsection prohibiting unsolicited [fax] advertisements.

(*Id.* at 8-9 (citations omitted)). Accordingly, the Court stayed the case because "the AmeriFactors Petition [sought] a ruling on an issue that would directly implicate

4

whether [P]laintiffs may satisfy commonality or predominance, and whether Mussat may serve as a class representative." (*Id.* at 10, 12 (footnote omitted)).

## II.    Requested Relief

In the motion *sub judice*, Plaintiffs seek an order certifying a class dubbed the "All Fax Recipients Class" under Federal Rule of Civil Procedure 23(b)(3) and formally defined as follows:

### All Fax Recipients

> All persons or entities who were successfully sent a facsimile on or about December 18-23, 2015, stating "Happy Holiday" and inviting recipients to apply for an "Exclusive Doctors Club World Elite MasterCard" credit card, where the fax either (a) contains no "opt-out notice" explaining how to stop future faxes; or (b) contains an opt-out notice stating: "Recipient may Opt Out of any future faxes by emailing a request to OptOut@TheDrClub.com or by calling 949.202.1777."

(Doc. 159 at 3).

Plaintiffs request that if the Court certifies the All Fax Recipients Class, as defined, then the Court also appoint Plaintiffs Scoma, Dr. Gress, and Mussat as class representatives. (*Id.*). If, however, the Court "finds it necessary to distinguish between faxes received on a 'stand-alone' fax machine and faxes received via 'online fax service' following the Ameri[F]actors Bureau Order," Plaintiffs request in the alternative that the Court certify the following classes:

5

**Stand-Alone Fax Machine Class**

All persons or entities who were successfully sent a facsimile on a stand-alone telephone facsimile machine on or about December 18-23, 2015, stating "Happy Holiday" and inviting recipients to apply for an "Exclusive Doctors Club World Elite MasterCard" credit card, where the fax either (a) contains no "opt-out notice" explaining how to stop future faxes; or (b) contains an opt-out notice stating: "Recipient may Opt Out of any future faxes by emailing a request to OptOut@TheDrClub.com or by calling 949.202.1777."

**Online Fax Service Class**

All persons or entities who were successfully sent a facsimile via an "online fax service" on or about December 18-23, 2015, stating "Happy Holiday" and inviting recipients to apply for an "Exclusive Doctors Club World Elite MasterCard" credit card, where the fax either (a) contains no "opt-out notice" explaining how to stop future faxes; or (b) contains an opt-out notice stating: "Recipient may Opt Out of any future faxes by emailing a request to OptOut@TheDrClub.com or by calling 949.202.1777."

(*Id*. at 3-4).

In this alternative scenario, Plaintiffs request that the Court appoint "Scoma and [Dr.] Gress to represent the Stand-Alone Fax Machine Class and Mussat to represent the Online Fax Service Class." (*Id*. at 4). Plaintiffs contend that this is appropriate because Scoma and Dr. Gress received faxes on a stand-alone fax machine, and their claims are, therefore, typical of members of the Stand-Alone Fax Machine Class, and Mussat received the fax via an online fax service, making its claim typical of the Online Fax Service Class. (Doc. 165 at 18).

6

In both scenarios, Plaintiffs request that "the Court appoint the law firms of Anderson + Wanca ("A+W"), Edelman, Combs, Latturner & Goodwin ("ECLG"), and Curtis C. Warner ("Warner") as class counsel." (Doc. 159 at 4).

In response, Defendant essentially argues that because the AmeriFactors Order concluded that a person who receives a fax from an online fax service does not have a TCPA claim, class certification is improper. (*See* Doc. 162 at 20-21).

Before turning to the merits of Plaintiffs' request for class certification under Rule 23, the Undersigned first considers the potentially dispositive impact of the AmeriFactors Order on class certification.

### III.    Whether the AmeriFactors Order Impacts Class Certification.

A review of the TCPA's relevant regulatory history and the AmeriFactors Order itself are instructive and helpful to understanding the parties' respective arguments as to whether the AmeriFactors Order impacts Plaintiffs' bid for class certification in this action. The Undersigned summarizes these matters below and then addresses the parties' arguments in turn.

#### A.    Background Regarding the TCPA

The TCPA, as amended by the JFPA, bars any person from sending an unsolicited advertisement to a telephone facsimile machine. 47 U.S.C. § 227(b)(1)(C). The statute defines a telephone facsimile machine as "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." *Id*. § 227(a)(3).

7

In 2002, the FCC "sought comment on any developing technologies, such as computerized fax servers." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14132 (2003). In light of the comments, the FCC found it necessary to amend the TCPA in an attempt to continue to balance the interest of protecting consumer privacy and to avoid undue burdens on telemarketers ("2003 Order"). *Id*. at 14017. Ultimately, the FCC concluded that "faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes. However, . . . the prohibition does not extend to [faxes] sent as email over the Internet." *Id*. at 14134.

In 2015, the Consumer and Governmental Affairs Bureau (the "Bureau"), acting on delegated authority from the FCC, again considered whether emerging technology was encompassed by the TCPA in *In the Matter of Westfax, Inc. Petition for Consideration & Clarification* ("WestFax Order"). 30 F.C.C. Rcd. 8620 (2015). Specifically, the Bureau concluded that "an efax, a document sent as a conventional fax then converted to and delivered to a consumer as an electronic mail attachment," fell within the scope of the TCPA. *Id.* The Bureau noted that the petitioner's own "description of efaxes makes clear that the recipient computers are attached to fax servers or services that convert the fax into a format that is attached to an email received by the computer." *Id*. at 8623. Accordingly, the Bureau determined that because "the recipient computers are attached to fax servers or services that convert the fax into a format that is attached to an email received by the computer," they are necessarily equipment with the "capacity to 'transcribe text or images (or both) from

8

an electronic signal received over a telephone line onto paper.'" *Id.* (quoting 47 C.F.R. § 64.1200(f)(13)).

### B.  The AmeriFactors Order

In 2017, AmeriFactors filed a Petition requesting that the FCC issue a declaratory ruling clarifying that faxes sent to "online fax services" are not faxes sent to telephone fax machines. *In the Matter of AmeriFactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prot. Act of 2005*, No. 05-338, 2019 WL 6712128 (OHMSV Dec. 9, 2019).

On December 9, 2019, the Bureau, acting on delegated authority from the FCC, granted the relief requested in the AmeriFactors Petition and issued a declaratory ruling that an online fax service[4] does not consist of a telephone fax machine under the TCPA ("AmeriFactors Order"). *Id*. at *1.

Before issuing the declaratory ruling, however, the Bureau sought comment. *Id*. at *2. Various entities and individuals filed comments, with only five opposing. *Id*. The opposition essentially argued that "faxes sent to fax servers are subject to the

---

[4] The Bureau explained that an "online fax service" is a "a cloud-based service consisting of a fax server or similar device that is used to send or receive documents, images and/or electronic files in digital format over telecommunications facilities." *AmeriFactors Order*, 2019 WL 6712128, at *1.  This allows users to "access 'faxes' the same way that they do email:  by logging into a server over the Internet or by receiving a pdf attachment [as] an email." *Id*. (alteration in original; internal citation omitted).

TCPA's prohibitions, and that the time and resources expended to review faxes causes harm even with online fax services." *Id.* The Bureau disagreed and concluded that "a fax received by an online fax service as an electronic message is effectively an email" and was, therefore, "not subject to the TCPA." *Id.* at *3. The Bureau reasoned that because an online fax service cannot print a fax without a user connecting the service to a separate piece of equipment—*i.e.*, a printer—"an online fax service is plainly not 'equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.'" *Id.* (alteration in original). Further, the Bureau noted that faxes sent to an online fax service do not implicate the harms to consumers that Congress intended to protect in the TCPA—*i.e.*, (1) shifting the costs of advertising from the sender to the recipient and (2) occupying the recipient's fax machine such that it is "unavailable for legitimate business messages while processing and printing the junk fax." *Id.*

In explaining its decision, the Bureau discussed the 2003 Order and noted that in determining faxes sent as email over the internet did not fall within the TCPA, "the Commission made clear that where the equipment *itself* could transcribe a fax onto paper—such as a personal computer attached to printer and modem—it would remain within the scope of the statute." *Id.* at *2 (emphasis added). The Bureau further explained that it had reiterated this finding in the WestFax Order, concluding "that the 'efaxes' at issue . . . were received by equipment that had 'the capacity to transcribe text or images (or both) from an electronic signal received over a telephone line onto paper.'" *Id.* (quoting *In the Matter of Westfax, Inc. Petition for Consideration &*

10

*Clarification*, 30 F.C.C. Rcd. 8620 (2015) (internal quotations omitted)).

Nevertheless, the Bureau specifically distinguished online fax services from the

efaxes at issue in the WestFax Order, noting that while the WestFax Order

"assumed that the 'efax' in question was sent to a computer with an attached fax

modem that had the capacity to print the fax," the online fax services had no such

capacity. *Id.* (citing *In the Matter of Westfax, Inc. Petition for Consideration &*

*Clarification*, 30 F.C.C. Rcd. 8620).

### C.    Plaintiffs' Arguments

Plaintiffs argue the AmeriFactors Order does not impact their request for class

certification for several reasons. (Doc. 159 at 12-22). The Undersigned addresses

each argument in turn.

Plaintiffs first argue that both the FCC and the courts have rejected any

attempt to limit liability by "narrowly constru[ing] the terms 'telephone facsimile

machine' and 'capacity.'" (*Id.* at 13). In support, Plaintiffs point to the 2003 Order

in which the FCC ruled that "when a fax is sent to a 'fax server' and then forwarded

to the end-user by email, the 'fax-server' is a 'telephone [fax] machine.'" (*Id.*).

Plaintiffs maintain that the FCC concluded that "although a fax may not

automatically print when it is received by a fax server and forwarded to the user by

email," the cost is, nonetheless, shifted if the user chooses to print, it may tie up lines

and printers, and it interferes with business. (*Id.* at 13-14 (citations omitted)).

Moreover, Plaintiffs contend that in the 2003 Order, the FCC concluded that it made

"little sense to apply different rules based on the device that ultimately received it"

because the sender has no way of knowing what device the recipient uses. (*Id.* at 14 (citations omitted)). Additionally, Plaintiffs note that in September of 2015, the FCC revisited the 2003 Order in the WestFax Order and maintained that efaxes interfere with business and increase labor costs. (*Id.* at 14-15 (citing *In re WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd. at 8623)).

Plaintiffs also cite various pre-AmeriFactors Order, non-binding decisions in which "courts have relied on the FCC's ruling to reject fax advertisers' attempts to evade liability by arguing that faxes received by the end-user via an online fax service of 'e-fax' are not sent to a telephone [fax] machine." (*Id.* at 16-17). Plaintiffs maintain that the courts in the cited cases recognize that "'[e]ven a recipient who gets the fax on a computer and deletes it without printing suffers *some* loss: the value of the time necessary to realize that the inbox has been cluttered by junk,' and '[t]hat loss, and the statutory remedy, are the same for all recipients.'" (*Id.* at 17 (alterations and emphasis in original; quoting *Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013))). In essence, Plaintiffs argue that "[t]hese case authorities are consistent with the congressional 'purpose' in passing the TCPA: to 'facilitate interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers.'" (*See id.* (quoting S. Rep. 102-178 at 1, 1991 U.S.C.C.A.N. 1968, 1968)).

Next, Plaintiffs argue that the AmeriFactors Order "does not retroactively change the meaning of a 'telephone [fax] machine' for at least four reasons. (*Id.* at 17-22).

First, Plaintiffs argue that the AmeriFactors Order is irrelevant here and, therefore, the meaning of a telephone fax machine is not changed. (*Id.* at 18). Specifically, Plaintiffs maintain that they "do not claim that an 'online fax service' constitutes 'equipment' with the 'capacity' to be a 'telephone fax machine' under 47 U.S.C. § 227(a)(3). A 'service' is not 'equipment.'" (*Id.*). In support, Plaintiffs analogize an online fax service to a ride-sharing service:

> The Bureau's reasoning is akin to stating that a ride-sharing "service" like Uber is not "equipment" with the capacity to move people from one location to another (*i.e.*, an automobile). No one claims that Uber is an automobile, and no one claims that an online fax service, such as the WestFax "Faxforward" service considered in the WestFax Order or the Vonage eFax service used by Mussat, is a "fax machine." It is, rather, the "computerized fax server" that the online fax service uses to receive the fax transmission and forward it to the end-user that is "equipment" with the requisite "capacity" under the statute.

(*Id.*).

Second, Plaintiffs argue that if the AmeriFactors Order "can be read to mean that a fax server has the relevant 'capacity' only if it is currently configured to print to paper, rather than to forward the fax via email, it is contrary to Eleventh Circuit authority." (*Id.*). Specifically, Plaintiffs contend that the Eleventh Circuit has held that the device can have the "requisite 'capacity' [under the TCPA] to perform a task even if it is not currently configured to use that capacity." (*Id.* (citing *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1312 (11th Cir. 2020))).

Third, Plaintiffs argue that even if the Court could reasonably read "telephone fax machine, . . . to exclude faxes received via online fax service, the Court should

13

decline to do so." (*Id*. at 19). In support, Plaintiffs explain that as a remedial statute intended to protect consumers, the TCPA should be "broadly construed in favor of those it is designed to protect." (*Id*. (citations omitted)).

Fourth, Plaintiffs argue that even if the AmeriFactors Order were relevant and not contrary to Eleventh Circuit precedent, the AmeriFactors Order would not apply retroactively because it is a "drastic change in policy from the 2003 Order" and the WestFax Order. (*Id*. (citations omitted)). Additionally, Plaintiffs appear to contend that the change is not a clarification but a substantive change and, therefore, not entitled to deference. (*Id.* at 19-20 n.8 (citing *Clement v. Amscot Corp.*, 176 F. Supp. 2d 1292, 1296 (M.D. Fla. 2001))).

Moreover, Plaintiffs maintain that applying rules "[r]etroactively is not favored in the law" and that administrative rules have a retroactive effect only if: "(1) the 'language' of the administrative rule 'requires this [retroactive] result'; and (2) Congress has granted the agency 'the power to promulgate retroactive rules' in 'express terms.'" (*Id*. at 20 (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208-209 (1988)). Additionally, Plaintiffs contend that the Eleventh Circuit has applied *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) to conclude that while the rule at issue in that case did not require retroactive application, even if it did the Court would decline to do so "because nothing in either the Administrative Procedure Act or the Copyrights Act explicitly so empowers the Agency.'" (*Id*. (quoting *Nat'l Broad. Co. v. Satellite Broad. Networks, Inc.*, 940 F.2d 1467, 1469 n.4 (11th Cir. 1991), *superseded on other grounds by Satellite Broad. & Commc'ns Ass'n of Am.*

14

*v. Oman*, 17 F.3d 344 (11th Cir. 1994))). Plaintiffs maintain, therefore, that even if an agency ruling intends a retroactive effect, the Court must still determine whether Congress "expressly" or "explicitly" granted the agency the power to enact retroactive regulations. (Doc. 159 at 21 (citations omitted)).

Ultimately, Plaintiffs argue that "neither of the *Bowen* factors [are] met" in this case. (*Id*.). Specifically, Plaintiffs contend "[t]here is no clear statement in the [AmeriFactors Order] that it is intended to apply 'retroactively.' Even if there were, nothing in the TCPA expressly authorizes the FCC (let alone a subordinate Bureau acting on delegated authority) to issue retroactive rules." (*Id*.).

### D.    Defendant's Response

In response, Defendant asks the Court to defer to the Bureau's decision in the AmeriFactors Order and conclude that an online fax service is not a telephone fax machine under the TCPA for at least six reasons. (*See generally* Doc. 162 at 21-29). The Undersigned summarizes each of these arguments below.

First, Defendant argues that the Court should defer to the AmeriFactors Order as if it were an order by the full Commission of the FCC, maintaining that it is inconsequential that the AmeriFactors Order is subject to review because the Bureau's ruling has the same force "as an order of the full Commissioner unless and until the review is adjudicated." (*Id*. at 22-23 (citing *Indiana Bell Tel. Co. v. McCarty*, 362 F.3d 378, 387 (7th Cir. 2004); *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1104 (11th Cir. 2019))).

15

Second, Defendant maintains that the Court should apply the AmeriFactors Order "because, after reviewing 'a great deal of information on the nature and operations of current online fax services,' the Bureau determined that [the] AmeriFactors [Order] was consistent with prior FCC guidance, which involved different (and older) faxing technology." (*Id.* at 23 (quoting *AmeriFactors Order*, 2019 WL 6712128, at *1)). As a result, Defendant also maintains that the pre-AmeriFactors Order decisions cited by Plaintiffs are irrelevant and distinguishable. (*Id.* at 24; *see also id.* at 24 n.13).

Third, Defendant maintains that the AmeriFactors Order applies retroactively because it is an adjudication. (*Id.* at 24-25 (citing Doc. 152 at 10-11)). In support of that position, Defendant contends that: (1) the Order was characterized as a "Declaratory Ruling;" (2) "the Bureau also repeatedly states it was providing clarification;" (3) the FCC sought comment through the Bureau rather than initiating a "new notice-and-comment rule-making process;" and (4) "the ruling was 'effective upon release.'" (*Id.* at 25 (internal citations omitted)). Defendant argues that these actions are "consistent with other adjudicatory decisions of the FCC that have applied retroactively." (*Id.*). Thus, Defendant maintains that the AmeriFactors Order is "entitled to the presumption of retroactivity" unless Plaintiffs "show a manifest injustice." (*Id.* at 25-26).

Further, because the AmeriFactors Order is a "clarifying" order, Defendant argues that Plaintiffs' reliance on the Supreme Court's decision in *Bowen* and its progeny is misplaced. (*Id.* at 26-27).

Fourth, Defendant contends that Plaintiffs' argument that the AmeriFactors Order is irrelevant and Plaintiffs' "analogy to Uber" are also misplaced. (*Id*. at 27). Specifically, Defendant argues "the Bureau analyzed 'online fax service' as defined in the Petition, and that definition included the equipment used by those services." (*Id*. (citing *AmeriFactors Order*, 2019 WL 6712128, at *1)).

Fifth, Defendant argues that Plaintiffs' reliance on the Eleventh Circuit's decision in *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020) lacks merit. (Doc. 162 at 27 (citing *Glasser*, 948 F.3d at 1312)). Specifically, Defendant argues that in the AmeriFactors Order, "[t]he Bureau drew no distinction between present versus potential capacity of equipment, which is an issue that sometimes arises in TCPA cases." (*Id*. at 27-28 (citing *AmeriFactors Order*, 2019 WL 6712128, at *3)). Defendant maintains that the Bureau instead "concluded that online fax services cannot print faxes period." (*Id*. at 28).

Defendant further contends that *Glasser* determined "the TCPA's 'autodialer' definition required the equipment to have the capacity to use a sequential number generator to both store and produce telephone numbers to be called, and not just to produce them." (*Id*. (citing *Glasser*, 948 F.3d at 1306)). Defendant maintains that *Glasser* held "that the TCPA 'does not require that [the] capacity [at issue] be used in every covered call.'" (*Id*. (alterations in original; quoting *Glasser*, 948 F.3d at 1312)). As a result, Defendant argues the Bureau's finding that the equipment used by an

17

online fax service cannot, by itself, print to paper, is consistent with the Eleventh Circuit's decision in *Glasser*. (*Id.*).

Finally, Defendant argues that the cases relied on by Plaintiffs to support their argument that the Court should reject the AmeriFactors Order because the TCPA is a remedial statute are inapposite because none of the cited cases "ignored directly applicable FCC guidance like that provided in AmeriFactors." (*Id.*).

### E.    Analysis

For the reasons explained below, the Undersigned finds that the AmeriFactors Order indeed impacts Plaintiffs' Motion for Class Certification (Doc. 159) unfavorably to Plaintiffs.

#### i.    Deference to the AmeriFactors Order

As an initial matter, it is undisputed that the AmeriFactors Order is not a "final order" and, therefore, the Hobbs Act, which would require the Court to defer to the order, is not applicable. (*See* Doc. 159 at 3 n.4; Doc. 162 at 24 n.10; Doc. 165 at 6; Doc. 168 at 16). Nevertheless, while the Court may not be *required* to adopt the Bureau's interpretation of what constitutes a telephone fax machine, the Undersigned finds that it is prudent to do so. (*See* Doc. 152 at 8-13).

First, the Undersigned finds that the AmeriFactors Order is entitled to deference under the *Chevron* doctrine. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). In *Chevron*, the United States Supreme Court provided the framework for reviewing an agency's interpretation of its statute:

18

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* *Chevron* deference is only appropriate, however, "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of the law, and that agency interpretation claiming deference was promulgated in the exercise of that authority." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1256 (11th Cir. 2015) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 230-31 (2001)).

Congress clearly "delegated to the FCC 'authority to promulgate binding legal rules' to carry out the provisions of the TCPA." *Id.* (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980-81 (2005)). Additionally, the Eleventh Circuit has held that an order issued under "delegated rulemaking authority" by the Bureau has the "same force and effect of the Commission." *Safemark*, 931 F.3d at 1104 (citing 47 C.F.R. § 0.203).

Even so, *Chevron* deference is appropriate only if Congress has not addressed the precise issue. *See Chevron*, 467 U.S. at 842-43. Here, the first step is easily

19

satisfied because Congress did not define "any of the terms used in the definition of a telephone [fax] machine" and online fax services did not exist when the TCPA was enacted. *See Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, No. 1:17-CV-01149-JDB-JAY, 2020 WL 4937790, at *5 (W.D. Tenn. Aug. 24, 2020). Thus, Congress has not addressed the precise issue of whether online fax services constitute telephone fax machines under the TCPA. *See Chevron*, 467 U.S. at 842-43.

As to the second step, the Undersigned must consider "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. The Bureau's interpretation in the AmeriFactors Order is not unreasonable because the Bureau adopted the interpretation only after seeking comments from the community and reviewing a record that included "a great deal of information on the nature and operations of current online fax services." *AmeriFactors Order*, 2019 WL 6712128, at *2. Using that knowledge, the Bureau concluded that the harm was beyond that which Congress intended to protect against because the clear language of the statute and the 1991 House Report illustrate that Congress intended to protect against the specific harms associated with the use of equipment with the capacity to print. *See id.* at *2 (citing H.R. Rep. No. 317, 102d Cong., 1st Sess. 11 (1991)). Because the online fax services themselves cannot print—users can view the faxes on any device connected to the internet, including phones and tablets—the Undersigned finds that the Bureau's interpretation is reasonable. *See id.* Thus, the Undersigned finds that the Bureau's interpretation is entitled to *Chevron* deference. *See Chevron*, 467 U.S. at 842-43.

Nevertheless, even if the presiding United States District Judge finds that *Chevron* is inapplicable, it is still prudent to defer to the Bureau's findings. Indeed, the Bureau has specialized knowledge in this area and, as this Court has stated, "[w]hether [telephone fax machines] encompass online fax services is a matter of defining a technical term and Congress has explicitly tasked the FCC with prescribing regulations to implement the requirements of the TCPA." (Doc. 152 at 8-9). Additionally, the Bureau's decision, made under a delegation of authority from the FCC, "shall have the same force and effect, and shall be made, evidenced, and enforced in the same manner, as orders, decisions, reports, or other actions of the Commission." 47 U.S.C. § 155(c)(3); *see also* 47 C.F.R. § 0.203(b); *Indiana Bell Tel. Co. v. McCarty*, 362 F.3d 378, 387 (7th Cir. 2004) ("When, as here, . . . the agency delegates authority to a subdivision, the decision of the subdivision is entitled to the same degree of deference as if it were made by the agency itself." (citations and quotations omitted)). The Eleventh Circuit in *Gorss Motels, Inc. v. Safemark Sys., LP*, reiterated this point, explaining that an order issued under "delegated rulemaking authority" by the Bureau has the "same force and effect of the Commission." 931 F.3d 1094, 1104 (11th Cir. 2019) (citing 47 C.F.R. § 0.203). At base, the FCC's "interpretation is worth something." *Daisy, Inc. v. Mobile Mini, Inc.*, No. 2:20-CV-17-FTM-38MRM, 2020 WL 5701756, at *7 (M.D. Fla. Sept. 24, 2020), *appeal docketed* No. 20-14017 (11th Cir. Oct. 26, 2020).

Further, in the Order staying the proceedings, this Court noted the substantial impact the FCC's decision would have on this action. (Doc. 152 at 8-9). This Court

explained that, while the FCC had addressed "whether certain computerized faxing technology [fell] within the TCPA's prohibitions, the last occasion was in 2015, and none appear[ed] to be directly applicable to the issues raised here with regard to sending and receiving faxes using cloud-based servers." (*Id.* at 9). Further, this Court specifically addressed the effect of the AmeriFactors Petition on Plaintiffs' request for class certification, stating:

> [T]he AmeriFactors Petition seeks a ruling on an issue that would directly implicate whether plaintiffs may satisfy commonality or predominance, and whether Mussat may serve as a class representative. If the FCC statutorily exonerates online fax services from the TCPA, this could be a different case and at a minimum would affect the issues raised in the class certification briefing.

(*Id.* at 10 (footnote omitted)). The Undersigned finds, therefore, that to now ignore the Bureau's guidance in the AmeriFactors Order would make little sense, and the Undersigned recommends that the presiding United States District Judge defer to the AmeriFactors Order. (*See* Doc. 152).

Moreover, the Undersigned is not persuaded by Plaintiffs' urging that the Court should ignore the AmeriFactors Order and rely instead on the FCC's 2003 Order because it is the only "final order" of the FCC regarding the meaning of a telephone fax machine. (*See* Doc. 165 at 7-12). The Bureau affirmatively relied on the FCC's 2003 Order when clarifying the meaning of a telephone fax machine and the Bureau expressly found that the technology in the 2003 Order, and in the WestFax Order for that matter, differed from an online fax service. *AmeriFactors Order*, 2019 WL 6712128, at *4.

### ii. Retroactive Application of the AmeriFactors Order

This Court has already stated that the retroactive application of the AmeriFactors Order "depends on whether the [] decision is rulemaking or a clarification (or both), with a lens towards manifest injustice." (Doc. 152 at 10 (citing *Qwest Servs. Corp. v. F.C.C.*, 509 F.3d 531, 535-39 (D.C. Cir. 2007))).

The Undersigned finds that the Bureau's ruling was a "clarification." It is clear that the Bureau intended for its declaratory ruling to be a clarification of whether an emerging area of technology—online fax services—is considered a telephone fax machine under the TCPA. *See AmeriFactors Order*, 2019 WL 6712128, at *1 ("Our *clarification* is limited to an analysis of online fax services." (emphasis added)). Moreover, the request for comment was not labeled as a formal Order and Notice of Proposed Rulemaking. *See Consumer & Governmental Affairs Bureau Seeks Comment on AmeriFactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling Under the Tel. Consumer Prot. Act of 1991*, 32 F.C.C. Rcd. 5667 (2017). Finally, a "declaratory ruling" can be a form of adjudication when it is used "to terminate a controversy or remove uncertainty." *See Qwest Servs. Corp.*, 509 F.3d at 537-39. Here, the Bureau intended to remove the uncertainty of whether online fax services were within the scope of the TCPA. *See AmeriFactors Order*, 2019 WL 6712128, at *1. Specifically, the Bureau concluded that there was "sufficient controversy or uncertainty . . . to justify issuing a declaratory ruling" and that the issues raised by the commenters "support *clarification* of this issue." *Id.* at *3 (emphasis added).

Thus, the Undersigned finds that the AmeriFactors Order was an adjudication and carries a presumption of retroactivity.

Moreover, although the Undersigned finds *Qwest Services Corporation,* 509 F.3d at 531, persuasive for the reasons indicated above, the result would not be different even under the test articulated in *Clement v. Amscot Corporation*, 176 F. Supp. 2d 1292 (M.D. Fla. 2001), on which Plaintiffs rely heavily. In *Clement*, the court found that whether a decision has retroactive application depends on whether the change is consistent with prior agency interpretations and whether the change is clarification of existing law. *Clement*, 176 F. Supp. 2d at 1296. The AmeriFactors Order is a clarification and the Bureau specifically articulated why it is not inconsistent with either the WestFax Order or the 2003 Order. *See AmeriFactors Order*, 2019 WL 6712128, at *1, *4. Specifically, the Bureau clarified that online fax services effectively receive faxes sent as an email over the internet, consistent with the 2003 Order, and that online fax services cannot themselves print and, therefore, are not within the scope of the WestFax Order. *Id.*

Accordingly, Plaintiffs' argument that "retroactivity is not favored in the law" is misguided. (*See* Doc. 159 at 20). Unlike rule-making decisions, adjudication decisions "carry a presumption of retroactivity that we depart from only when to do otherwise would lead to 'manifest injustice.'" *Qwest Servs. Corp.*, 509 F.3d at 539 (internal citation omitted).

Moreover, although Plaintiffs did not explicitly argue that retroactivity would result in a manifest injustice, (*see* Docs. 159; 162), to the extent they did so by arguing

24

that the Bureau's decision is a substantive change, (Doc. 162 at 10), the Undersigned finds the argument to be without merit. As discussed above, the Undersigned finds that the Bureau's decision was a clarification of and consistent with prior FCC Orders. Additionally, in light of the Undersigned's findings below that the harm, if any, suffered by users of an online fax service is not the type of harm Congress intended to protect against, the Undersigned finds that retroactivity would not result in a manifest injustice. Rather, it ensures that Defendant is only liable to those with a cognizable claim under the TCPA.

### iii. Plaintiffs' Remaining Arguments

Next, Plaintiffs argue that "the [AmeriFactors Order] is irrelevant because Plaintiffs do not claim that an 'online fax service' constitutes 'equipment' with the 'capacity' to be a 'telephone [fax] machine.'" (Doc. 159 at 18). For the reasons stated above, the Undersigned disagrees and finds the AmeriFactors Order both relevant and persuasive.

The Undersigned also finds Plaintiffs' reliance on the Eleventh Circuit's decision in *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020) to be inapposite. (*See* Doc. 159 at 18). In *Glasser*, the Eleventh Circuit grappled with the statutory definition of an "automatic telephone dialing system" ("auto-dialer") under the TCPA. 948 F.3d at 1306. The Eleventh Circuit rejected the FCC's interpretation, largely out of concern that the FCC's interpretation of an auto-dialer opened the floodgates for potential violations. *Id*. *Glasser* determined that the FCC's interpretation of the word capacity "would create an administrative expansion of

25

coverage that extended to all communication technology." *Id*. Specifically, the Eleventh Circuit explained "[i]n the age of smartphones, it's hard to think of a phone that does not have the capacity to automatically dial telephone numbers stored in a list, giving § 227 an 'eye-popping' sweep." *Id*. (citing *ACA Int'l v. FCC*, 885 F.3d 687, 697 (D.C. Cir. 2018)). The Court observed that "[s]uddenly an unsolicited call using voice activated software (think Siri, Cortana, Alexa) or an automatic 'I'm driving' text message could be a violation worth $500." *Id*. (citing 47 U.S.C. § 227(c)(5)(B)).

The Undersigned finds that the Eleventh Circuit's concern in *Glasser* is not implicated by the AmeriFactors Order. In fact, the AmeriFactors Order does the opposite. In *Glasser*, the Eleventh Circuit rejected the FCC's definition of the word "capacity" to mean "potential." *See id*. By doing so, the Court narrowed the scope of the TCPA in the auto-dialer context. Here, if the Court were to reject the Bureau's definition, the scope of the TCPA would increase significantly, which is presumably what prompted the AmeriFactors Petition in the first instance. Further, contrary to Plaintiffs' assertion, the *Glasser* Court does not discuss the present configuration issue. *See id.* at 1301-14. Even if it did address the present configuration issue, the AmeriFactors Order is still distinguishable because the Bureau concluded that the online fax services themselves do not have the requisite capacity at all. *See AmeriFactors Order*, 2019 WL 6712128, at *4. For these reasons, the Undersigned finds that applying the AmeriFactors Order would not be inconsistent with *Glasser*. *See Glasser*, 948 F.3d at 1301.

26

Lastly, the Undersigned rejects Plaintiffs' argument that the Court should decline to adopt the Bureau's interpretation of the word "capacity" because the TCPA "is a remedial statute that was passed to protect consumers" and should be "broadly construed in favor of those it is designed to protect." (Doc. 159 at 19). Instead, the Undersigned agrees with the Bureau's reasoning that users of an online fax service are not the type of consumers Congress had in mind when enacting the TCPA or the JFPA. *See AmeriFactors Order*, 2019 WL 6712128, at * 3. In addressing why an online fax service does not constitute a telephone fax machine, the Bureau clearly explained that consumers can manage faxes sent to online fax services in "the same way they manage email by blocking senders or deleting incoming messages without printing them." *Id*. Moreover, the Bureau specifically rejected the argument that users of online fax services suffer harm, explaining that "the more general harms that such commenters point to—such as time spent monitoring unwanted faxes stored by online fax services—are more generalized harms that go beyond the specific harms Congress identified in enacting the TCPA." *Id*. In light of the Bureau's reasoning, the Undersigned finds that the users of an online fax service do not endure the type of harm Congress intended to protect against and the TCPA, therefore, need not be broadly construed to protect users of an online fax service. *See id*.

### F.    Issue for Appeal

Plaintiffs affirmatively state that if the Court finds that the Hobbs Act requires it to "accept the [AmeriFactors Order] then Plaintiffs reserve their right to appeal on

the basis" that *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014) and *Self v. Bellsouth Mobility, Inc.*, 700 F.3d 453 (11th Cir. 2012) should be overruled, as proposed by the *Safemark* concurrence. (Doc. 165 at 12); *see also Safemark*, 931 F.3d at 1094. The Undersigned finds this point irrelevant. As stated above, the Undersigned concludes that the Hobbs Act does not require the Court to accept the Bureau's definition of a telephone fax machine because it is undisputed that the AmeriFactors Order is not a "final order." (*See* Doc. 159 at n.4; Doc. 162 at n.10; Doc. 165 at 6; Doc. 168 at 16). Rather, the Undersigned recommends that the Court defer to the Bureau's definition for the other reasons set out extensively above.

Having addressed the threshold issue of whether an online fax service constitutes a telephone fax machine under the TCPA, the Undersigned now turns to the merits of Plaintiffs' Amended Motion for Class Certification (Doc. 159).

## IV. Class Certification Under Rule 23

The United States Supreme Court has noted that class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, (2011) (quotation and citation omitted). To justify a departure from that rule, a class representative must be a part of the class, possess the same interests, and suffer the same injuries as the class members. *Id.*

Federal Rule of Civil Procedure 23 sets forth the requirements for class actions. All putative classes "must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set

28

forth in Rule 23(b)." *Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009)). "Rule 23(a) requires every putative class to satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Id.*

As for Rule 23(b), Plaintiffs contend that the proposed class satisfies Rule 23(b)(3). (Doc. 159 at 4). Under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* The Undersigned addresses the requirements of Rule 23(a) and (b)(3) separately below.

## A. Fed. R. Civ. P. 23(a)

The requirements of Rule 23(a) ensure that named plaintiffs are appropriate representatives of the class they wish to litigate. *Dukes*, 564 U.S. at 349. "The Rule's four requirements – numerosity, commonality, typicality, and adequate representation – 'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). Whether to certify a class rests in the sound discretion of the district court. *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619, 624 (M.D. Fla. 2010) (citing *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1189 (11th Cir. 2009)).

Nevertheless, the party moving for class certification has the burden to establish all implicit and explicit requirements of Fed. R. Civ. P. 23. *Bussey v. Macon*

29

*Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014); *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003).  Indeed, Fed. R. Civ. P. 23 does not establish a mere pleading standard.  *Dukes*, 564 U.S. at 350.  Instead, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  *Id.* at 351.

Furthermore, the Supreme Court has recognized that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."  *Id.* at 350-51 (quoting *Falcon*, 457 U.S. at 156).  "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Id.* at 351 (quoting *Falcon*, 457 U.S. at 157).  Accordingly, the Court must conduct a "rigorous analysis" of the Fed. R. Civ. P. 23(a) prerequisites that may overlap with the merits of a plaintiff's underlying claim.  *Id.*

The specific requirements of Fed. R. Civ. P. 23(a) include:

    (1)    the class is so numerous that joinder of all members is impracticable;

    (2)    there are questions of law or fact common to the class;

    (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four prerequisites are "'designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims.'" *Valley Drug Co.*, 350 F.3d at 1188 (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000)). If the moving party fails to establish any one of these four factors, then the party is precluded from class certification. *Id.*

The Undersigned addresses each of the requirements of Rule 23(a) below, together with the threshold questions of standing, the class definition, and ascertainability.

### i.     Standing

"For a district court to certify a class action, the named plaintiffs must have standing." *Vega*, 564 F.3d at 1265 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004)). Whether each named plaintiff has standing to sue is, therefore, a threshold question in any class action case. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir.1987); *Prado–Steiman*, 221 F.3d at 1279-80. For the reasons stated below, the Undersigned finds that not only does named Plaintiff Mussat lack standing to represent either the All Fax Recipients Class or the alternative Online Fax Service Class, but the unnamed class members in those putative class also have no constitutional or statutory standing.

### a.     Constitutional Standing

If the plaintiff does not have constitutional standing, the district court is powerless to entertain the suit. *See Hollywood Mobile Estates Ltd. v. Seminole Tribe of*

31

*Fla.*, 641 F.3d 1259, 1264-65 (11th Cir. 2011); *see also* U.S. Const. art. III, § 2. Defendant does not affirmatively challenge Plaintiffs' standing under Article III of the Constitution. Nevertheless, the Undersigned addresses the issue below because it impacts this Court's power to entertain the claims of the named Plaintiffs and the unnamed class members.

Specifically, the Undersigned notes that this Court recently held that a plaintiff using an online fax service and alleging harm only in the form of wasted time does not have Constitutional standing to sue. *See Daisy, Inc. v. Mobile Mini, Inc.*, No. 2:20-CV-17-FTM-38MRM, 2020 WL 5701756, at *7 (M.D. Fla. Sept. 24, 2020) ("At bottom, it is clear Congress did not view one wasted minute spent reviewing a junk fax received through e-mail as a concrete injury."), *appeal docketed* No. 20-14017 (11th Cir. Oct. 26, 2020). Based on this reasoning, the Undersigned finds that Mussat and any unnamed class members who also allegedly received the fax at issue via an online fax service must likewise lack standing to sue under Article III of the United States Constitution. *See id.* As a result, the Undersigned finds that neither the Online Fax Services Class nor the All Fax Recipients Class, which includes users who received the fax via an online fax service, can be certified due to a lack of constitutional standing and Mussat lacks constitutional standing to represent either putative class.

### b.     Statutory Standing

Unlike constitutional standing, statutory standing asks whether Congress has accorded this injured plaintiff the right to sue the defendant to redress the plaintiff's

injury. *Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 295 (3d Cir. 2007). Notably, the Supreme Court has clarified this inquiry into "statutory standing," occasionally referred to as "prudential standing," "is . . . tied to a particular statute." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386-88 (2014)). It asks "whether the statute grants the plaintiff the cause of action that he asserts. In answering that question, [the Court] presume[s] that a statute ordinarily provides a cause of action 'only to plaintiffs whose interests fall within the zone of interests protected by the law invoked.'" *Id.* (quoting *Lexmark*, 134 S. Ct. at 1387). Thus, the inquiry is not truly a matter of standing. *See Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704, 708 (11th Cir. 2019), *cert. denied sub nom. Kroma Makeup EU, LLC v. Kardashian*, 140 S. Ct. 381 (2019); *see also Lexmark*, 134 S. Ct. at 1387 n.4 (noting that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case" (emphasis in original)). Rather, the analysis is "a straightforward question of statutory interpretation." *Tillman v. Ally Fin. Inc.*, No. 2:16-CV-313-FTM-99CM, 2017 WL 1957014, at *4 (M.D. Fla. May 11, 2017) (citing *Lexmark*, 134 S. Ct. at 1388).

Here, Defendant challenges the statutory standing of online fax service users, such as Mussat, in light of the AmeriFactors Order. (Doc. 162 at 29-30).

33

As explained above, the TCPA makes it unlawful to "use any telephone [fax] machine, computer, or other device to send, to a telephone [fax] machine, an unsolicited advertisement" unless certain exceptions apply and provides a private right of action to enforce its provisions. 47 U.S.C. § 227(b)(1); *id.* § 227(b)(3).

Because the Undersigned finds that the Court should defer to the Bureau's interpretation in the AmeriFactors Order, all users of an online fax service, including Mussat, lack standing to assert a claim under the TCPA. *See Lexmark*, 134 S. Ct. at 1387 n.4. This conclusion precludes certification of either the All Fax Recipients Class, to the extent it includes users of an online fax service, or the alternative Online Fax Service Class, which includes only users of an online fax service. For purposes of class certification analysis, therefore, the Stand-Alone Fax Machine Class is left to stand alone.

Moreover, the Undersigned finds that Mussat cannot represent the All Fax Recipients Class or the Online Fax Service Class because Mussat lacks standing under the TCPA. *See Borg v. Phelan, Hallinan, Diamond & Jones, PLLC*, No. 8:16-CV-2070-T-33TGW, 2017 WL 2226649, at *6 (M.D. Fla. May 22, 2017) (finding that a plaintiff who lacks standing cannot serve as a representative of the class). Thus, to the extent that Plaintiffs seek to have Mussat represent the All Fax Recipients Class and Online Fax Service Class (*see* Doc. 159 at 3), the Undersigned finds this request must be denied.

Because the members of the Online Fax Service Class and the All Fax Recipients Class lack both constitutional and statutory standing, the Undersigned

finds that the motion *sub judice* is due to be denied to the extent it seeks to certify the Online Fax Service Class or the alternative All Fax Recipients Class. Nevertheless, because Defendant has not challenged Dr. Gress's and Scoma's standing and the record does not otherwise reflect that either Dr. Gress or Scoma lack standing under the Constitution or the TCPA, the Undersigned finds that Dr. Gress and Scoma appear to have standing to represent the Stand-Alone Fax Machine Class. Based on the foregoing, the Undersigned considers the remaining requirements of Rule 23 only as to the Stand-Alone Fax Machine Class.

### ii.     Class Definition and Ascertainability

Another threshold consideration is whether Plaintiffs have demonstrated that the proposed class is adequately defined and clearly ascertainable. *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014). Defendant does not challenge the adequacy of the proposed class definitions, but it argues that the class as defined is not ascertainable and will lead to numerous individualized inquiries. (Doc. 162 at 36-45). The Undersigned addresses each concern in turn, focusing on the Stand-Alone Fax Machine Class.

The Eleventh Circuit has consistently concluded that "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria" and the objective criteria is administratively feasible. *Bussey*, 562 F. App'x at 787 (quoting *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 97 (S.D.N.Y. 2009));[5] *see Karhu v. Vital*

---

[5] Citation to unpublished opinions on or after January 1, 2007, is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive

*Pharmacy Inc.*, 621 F. App'x 945, 947 (11th Cir. 2015) ("In order to establish ascertainability, the plaintiff must propose an administratively feasible method by which class members can be identified."); *see also Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 457-58 (M.D. Fla. 2018) (adopting the administrative feasibility standard). "'Administrative feasibility' means 'that identifying class members is a manageable process that does not require much, if any, individual inquiry.'" *Bussey*, 562 F. App'x at 787 (quoting *Newberg on Class Actions* § 3.3 p. 164 (5th ed. 2012)). As this Court has explained:

> Requiring a "manageable process that does not require much, if any, individual inquiry" gives a district court substantial flexibility to consider the facts of a particular case and tailor the administrative process to the unique needs of the case. Afterall, courts do not normally consider cases for which there is no feasible method of identifying a party or affording judicial relief. Thus, in determining the requirement that the class be "clearly ascertainable," some reasonable level of administrative feasibility is necessary.

*Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 269 (M.D. Fla. 2019) (internal citation omitted). Class certification should be denied "where the class definitions are overly broad, amorph[o]us, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." *Kirts v. Green Bullion Fin. Servs., LLC*, No. 10-20312-CIV, 2010 WL 3184382, at \*6 (S.D. Fla. Aug. 3, 2010) (quoting *Perez v. Metabolife Int'l,*

---

authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36–2. The Undersigned, therefore, does not rely on unpublished opinions as precedent.

*Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003)). After a plaintiff satisfies this threshold issue, then the district court conducts its rigorous analysis of the Rule 23 prerequisites. *Bussey*, 562 F. App'x at 787 (citations omitted).

Although Plaintiffs argue that there is a split of authority on whether "ascertainability" requires a traditional analysis (*i.e.*, whether determining membership is possible) and a heightened standard (*i.e.*, whether determining membership is administratively feasible), (*see id.* at 22), as stated above, the Eleventh Circuit has consistently applied the administrative feasibility test, *see Bussey*, 562 F. App'x at 787; *see also Karhu*, 621 F. App'x at 947. Thus, while Plaintiffs address ascertainability under both standards, the Undersigned finds that the Court need only address Plaintiffs' arguments that the proposed class is administratively feasible.

Plaintiffs argue the class definitions they have proposed are ascertainable. (Doc. 159 at 22-29). In support, Plaintiffs cite decisions from the Southern District of Florida in which the trial court applied the administrative feasibility test and "held [that] the class, when 'supported by a report like the Biggerstaff report,' satisfied the 'implicit ascertainability and administrative feasibility requirement'" and any issues in locating and notifying class members could be addressed after the class was certified. (*Id.* at 25-26 (quoting *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 693 (S.D. Fla. Aug. 5, 2015))). Plaintiffs argue that the courts have specifically found that "Biggerstaff's methodology is sound and reliable, and it provides a manageable process for identifying class members using objective criteria." (*Id.* at 25-26 (quoting *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-

37

22330-CIV, 2014 WL 7366255, at *4 (S.D. Fla. Dec. 24, 2014))).  Similarly, Plaintiffs

cite to decisions within the Third Circuit, where the trial courts applied the

heightened standard in TCPA fax cases and reached different results "depending on

whether the target fax numbers and/or transmission logs are available." (*Id*. at 26).

Plaintiffs argue that as in the cited cases, their expert "has identified the

unique fax numbers to which the faxes were sent, and the number of successful

transmissions to each number." (*Id*. (citation omitted)).  Thus, Plaintiffs maintain

that the Court should find the All Fax Recipients Class is ascertainable under the

heightened standard.  (*Id*. at 26-27).

In the alternative, if the Court finds that the AmeriFactors Order requires a

differentiation between users of online fax services and users of stand-alone fax

machines, Plaintiffs argue that "counsel can accomplish this task after class

certification using the transmission records as 'a *starting point* from which' to use

other methods, 'including the use of self-identifying affidavits and subpoenas.'" (*Id*.

at 27 (quoting *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV, 2018 WL 3145807, at

*13 (S.D. Fla. June 26, 2018), *reconsideration denied,* No. 16-24077-CIV, 2018 WL

5004864 (S.D. Fla. Oct. 15, 2018))).  If the Court chooses this approach, Plaintiffs

explain that their counsel can use the following three-step process:

> (1) Plaintiffs' counsel will subpoena the Local Number Portability Administrator ("LNPA") of the Number Portability Administrative Center ("NPAC") to identify phone carriers for all phone numbers in the certified class for the date range included in the class definition;

> (2)     Plaintiffs' counsel will use the NPAC subpoena response to subpoena each identified phone carrier to identify the subscriber of each phone number; and
>
> (3)     Plaintiffs' counsel will designate for the "Online Fax Services Class" all numbers where the subscriber is an "online fax service" provider, such as Vonage, j2 Global, RingCentral, etc., and designate for the "Stand-Alone Fax Machine Class" all other subscribers.

(*Id.*).

Plaintiffs maintain that their counsel has used this subpoena process in the past to identify subscribers in other TCPA cases. (*Id.*). Plaintiffs argue there "is no indication that, in this particular case, self-identification through affidavits is not administratively feasible or 'otherwise problematic.'" (*Id.* (quoting *Reyes*, 2018 WL 3145807, at *13)). Plaintiffs maintain, therefore, that this "easily satisfies the 'administrative feasibility' standard for identifying class members." (*Id.* at 28 (citing *Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 677 (S.D. Fla. 2018))).

Defendant argues that Plaintiffs have not shown an administratively feasible manner to identify class members for at least three reasons. (Doc. 162 at 38-45). First, Defendant states that Plaintiffs' plan is not supported by any evidence, "much less evidence that it will succeed." (*Id.* at 38 (emphasis omitted)). In support, Defendant contends that Plaintiffs have provided no evidence of feasibility and rely only on "four paragraphs in a declaration from one of their attorneys," who has apparently used the proposed identification process in the past. (*Id.* at 38-39).

Next, Defendant argues that Plaintiffs' plan is "unmanageable, unrealistic[,] and doomed to fail." (*Id.* at 40 (emphasis omitted)). Defendant provides five distinct reasons in support of this argument. (*Id.* at 40-42). First, Defendant maintains that "because this is a fax case, LNAP would be identifying landline carriers, of which there are, at a minimum, hundreds." (*Id.* at 40). Defendant contends that in *Physicians Healthsource, Inc. v. Stryker Sales Corporation*, "Plaintiffs' counsel issued 120 subpoenas to carriers seeking subscriber identities relating to just 8,000 fax numbers. There are about 47-times more fax numbers here (381,000/8,000 = 47), so it is safe to assume that Plaintiffs would have to subpoena several hundred carriers." (*Id.* (citing *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, No. 1:12-CV-729, 2014 WL 11429029, at *1 (W.D. Mich. Feb. 20, 2014)) (internal footnote omitted)). Second, Defendant argues that "not all of the carriers will have subscriber information going back to December 2015," leading to further individual inquiries. (*Id.* at 41 (citing *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 473 (S.D. Cal. 2014))). Third, Defendant contends "regardless of whether [the carriers] have responsive information many carriers will either not respond to the subpoena or object to them." (*Id.* (citing *Stryker Sales Corp.*, 2014 WL 11429029, at *1; *Keim*, 328 F.R.D. at 677)). Fourth, Defendant argues that "the format of the responses from the carriers will be inconsistent, undermining the reliability of those responses given their purported use here." (*Id.* at 41-42 (citing *Stryker Sales Corp.*, 2014 WL 11429029, at *1)). Fifth, Defendant contends that Plaintiffs' "plan would create significant burdens on the LNAP, the

40

carriers, the parties here, and courts all over the country." (*Id.* at 42 (citing *Stryker Sales Corp.*, 2014 WL 11429029, at *1)). Ultimately, Defendant maintains that "Plaintiffs should not be permitted to create so many burdens, particularly when they cannot muster evidence that even suggests imposing those burdens will lead to the successful and accurate identification of the Stand-Alone Fax Machine Class." (*Id.*).

Defendant's third argument is that "Plaintiffs' plan would lead to innumerable individual inquiries." (*Id.* at 43). Defendant maintains that Plaintiffs make several unsupported "presumptions" regarding the online fax services recordkeeping and subscription practices in their plan, including:

> (a) Plaintiffs know of the names of every online fax service provider; (b) those providers subscribe to fax numbers using the same name under which they offer their online fax services, and do so for every carrier; (c) the subscriber information would clearly identify those providers; (d) those providers could not be identified as the subscriber unless they were providing online fax services to that fax number; and (e) that a person who or business that uses an online fax service cannot still be listed as a subscriber to their fax number in the carrier's records.

(*Id.*). Defendant contends, however, that determining if the presumptions are accurate will require individualized inquiries "into the process of each carrier for identifying subscribers and retaining records, and the manner in which each online fax service subscribes to fax numbers, including whether they are always the subscriber," defeating administrative feasibility. (*Id.* at 43-44).

As an initial matter, because the Undersigned has found users of an online fax service do not have a standing under the TCPA, the alternative method of

41

ascertaining class members—in which Plaintiffs propose to use "the transmission records as 'a *starting point* from which' to use other methods, 'including the use of self-identifying affidavits and subpoenas'"—would be necessary to differentiate between users of online fax services and users of stand-alone fax machines. (*See* Doc. 159 at 27).

In that regard, the Undersigned agrees with Defendant that Plaintiffs' proposed method of identification would lead to individual inquiries that defeat the administrative feasibility requirement. *See Bussey*, 562 F. App'x at 787 (citation omitted). As this Court has noted, the list of fax numbers Plaintiffs produced do not show which users received the fax at issue via a stand-alone fax machine or an online fax service and such a determination would require individual inquiries. (Doc. 152 at 10 n.4).

As to the proposed subpoena method, although Plaintiffs argue that their counsel has previously used the method successfully, (*see* Doc. 159-4 at 2-3), the amount of fax numbers in this case is considerably greater. Specifically, in *Physicians Health Source, Inc. v. Stryker Sales Corporation*, in which Plaintiffs' counsel purportedly used the proposed subpoena method, approximately 8,000 fax numbers had received faxes. *Stryker Sales Corp.*, 2014 WL 11429029, at *1. Here, however, the parties allege 381,011 numbers received faxes—*i.e.*, approximately forty-seven times the number in *Stryker*. (Doc. 159 at 29 (quoting Doc. 159-2 at 295)). Moreover, Plaintiffs' conclusory statement that "[t]he subpoena response from LNPA will provide information for the majority of numbers" is heavily undermined by their

42

concession that "Plaintiffs will likely need to subpoena some carriers who provide both landline services and online fax services." (Doc. 165 at 17). Thus, even though Plaintiffs contend its *possible*, the sheer number of subpoenas required prevent it from being *feasible*. *See Bussey*, 562 F. App'x at 787.

Further, the Undersigned finds Plaintiffs' plan to use affidavits is problematic. *See Sliwa*, 333 F.R.D. at 272 (finding that the use of self-identifying affidavits to identify class members "heighten[ed] . . . the case-by-case analysis"); *Wilson*, 329 F.R.D. at 458 (finding that a self-attestation process "ignores the very purpose of ascertainment and will, in any event, require an individualized inquiry"). Moreover, the use of affidavits implicates Defendant's "due process rights to challenge the claims of each putative class member," but allowing Defendant to contest each affidavit would require a series of mini-trials to determine class membership. *See Karhu*, 621 F. App'x at 947. Further, Plaintiffs have not adequately explained how the use of subpoenas will allow Defendant to challenge the affidavits in an administratively feasible manner. *See id.* at 947 n.5.

For all of these reasons, the Undersigned finds that the Stand-Alone Fax Machine Class is not ascertainable because it is unmanageable, is administratively infeasible, and necessitates considerable individual inquiry. *Bussey*, 562 F. App'x at 787.

### iii. Numerosity

To certify a class, Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The plaintiff bears the burden of making some showing, albeit a "generally low hurdle," of "affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Vega*, 564 F.3d at 1267; *Schojan v. Papa Johns Int'l, Inc.,* 303 F.R.D. 659, 664 (M.D. Fla. 2014). Although the mere allegation of numerosity is insufficient, the plaintiff need not show a precise number of members for the putative class and, further, the rule imposes a "generally low hurdle." *Vega*, 564 F.3d at 1267. In dicta, the Eleventh Circuit has held, "while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (citation omitted).

Plaintiffs argue their proposed class is sufficiently numerous because "the faxes were sent in 381,011 transmissions." (Doc. 159 at 29 (quoting Doc. 159-2 at 295)). The Undersigned finds that 381,011 potential class members (less any users of online fax services) is more than sufficient to establish numerosity. *See Cox*, 784 F.2d at 1553. Moreover, the joinder of 381,011 potential class members (less any users of online fax services) is impracticable. *See* Fed. R. Civ. P. 23(a)(1). Accordingly, the Undersigned finds that Plaintiffs met their burden as to numerosity. *See Vega*, 564 F.3d at 1267.

### iv.    Commonality

For purposes of the "commonality" requirement of Rule 23(a)(2), "even a single common question will do." *Carriuolo v. General Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (citation omitted). "That common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* (citing *Dukes*, 564 U.S. at 338).

Plaintiffs argue that because there are six common questions and at least one can be resolved classwide, the "minimal 'commonality' requirement is satisfied." (Doc. 159 at 30). Specifically, the allegations involve common conduct by Defendant, and Plaintiffs identify at least six specific common questions of law or fact, including: (1) whether the faxes are advertisements; (2) whether Defendant is a "sender" as defined in the statute; (3) whether the faxes were sent using a telephone fax machine, computer, or device to a telephone fax machine; (4) whether Defendant had prior express permission to send the faxes; (5) whether the faxes contain opt-out notices; and (6) whether the violations were willful or knowing. (*Id.*).

Defendant does not directly address the commonality requirement but appears to concede that there are common questions. (*See* Doc. 162 at 31).

Here, the Undersigned finds that there is at least one common question of law or fact. *See Carriuolo*, 823 F.3d at 984. Specifically, whether Defendant is a "sender" as defined in the statute is "capable of classwide resolution." *See id.* Thus, the Undersigned finds that there is at least one question common to all class members.

*See Holmes v. DRS Processing LLC*, No. 3:18-CV-1193-J-39JRK, 2020 WL 7419687, at

*5 (M.D. Fla. Nov. 3, 2020), *report and recommendation adopted sub nom. SUMMER HOLMES, on behalf of herself & all others similarly situated, Plaintiff, v. DRS PROCESSING, LLC, d/b/a MILLER, STARK, KLEIN & ASSOCIATES, Defendant.*,

No. 3:18-CV-1193-J-39JRK, 2020 WL 8222232 (M.D. Fla. Dec. 23, 2020) (finding

that the single question whether the defendant used an automatic telephone duality

system and/or artificial or prerecorded voice sufficient to meet the commonality

requirement).

Accordingly, the Undersigned finds that Rule 23(a)(2) is satisfied as to the

Stand-Alone Fax Machine Class.

### v. Typicality

Rule 23(a)(3) requires "the claims or defenses of the class and the class

representative arise from the same event or pattern or practice and are based on the

same legal theory." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir.

2009) (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.

1984)). Stated another way, typicality requires that there be "a sufficient nexus. . .

between the legal claims of the named class representatives and those of individual

class members to warrant class certification." *Ault v. Walt Disney World Co.*, 692 F.3d

1212, 1216 (11th Cir. 2012) (quoting *Prado–Steiman*, 221 F.3d at 1278–79). Further,

"[t]he typicality requirement may be satisfied despite substantial factual differences,

however, when there is a strong similarity of legal theories." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (internal quotation omitted).

Here, Plaintiffs argue that "[t]ypicality is satisfied because each class member was subjected to the same conduct, *i.e.*, the unsolicited Doctors Club fax-advertising campaign." (Doc. 159 at 31). Defendant does not directly address whether the typicality requirement is satisfied as it relates to either Dr. Gress or Scoma who seek to represent the Stand-Alone Fax Machine Class. (*See* Docs. 162; 168).

The Undersigned finds that the claims of Plaintiffs Scoma and Dr. Gress are typical of each other and the Stand-Alone Fax Machine Class members. *See Kornberg*, 741 F.2d at 1337. Specifically, Plaintiffs Scoma and Dr. Gress received the same unsolicited Doctors Club fax advertisement, and their claims raise the same factual and legal questions as the unnamed class members. (*See* Doc. 159 at 31). However, because the Undersigned finds that Mussat lacks standing, Mussat can neither bring a claim nor represent the interests of others, and Mussat's claims are not typical of any member of the Stand-Alone Fax Machine Class. *See Prado-Steiman*, 221 F.3d at 1279 ("It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class.").

### vi. Adequacy of Class Representation

Determining the adequacy of representation of the named Plaintiffs requires two separate inquiries: "(1) whether any substantial conflicts of interest exist

between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug*, 350 F.3d at 1189).

Here, the Undersigned finds that Plaintiffs Scoma and Dr. Gress are adequate representatives for either the Stand-Alone Fax Machine Class. Specifically, the record reveals no conflict of interest between the named Plaintiffs Scoma and Dr. Gress and the unnamed class members, and Plaintiffs have demonstrated that Scoma and Dr. Gress will adequately prosecute this action. (Doc. 159 at 32-33). Both Scoma and Dr. Gress testified, under oath, that they understand their duties to the class members, and there is no reason to believe that Plaintiffs Scoma and Dr. Gress lacked any diligence in prosecuting this matter. (*See id.*; *see also* Doc. 159-2 at 325-31; Doc. 159-3 at 16; 17-59).

The same, however, cannot be true of Mussat. Rather, it is well-settled that a plaintiff "cannot represent a class to which they do not belong." *Rosario v. Rockefeller*, 410 U.S. 752, 759 (1973); *see also E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (collecting cases). Thus, because the Undersigned finds that Mussat is not a member of the Stand-Alone Fax Machine Class and otherwise lacks standing to bring a claim, it follows that Mussat is also not an adequate representative of the Stand-Alone Fax Machine Class. *See id.*

### vii.  Adequacy of Class Counsel

In assessing the adequacy of class counsel, courts consider:

48

> (i)     the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)   counsel's knowledge of the applicable law; and
>
> (iv)   the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Also, courts "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id*.

Here, the Undersigned finds the proposed class counsel adequate. As Plaintiffs note, the proposed class counsel "are experienced class-action and TCPA practitioners who are qualified to act as counsel for the classes" and have all been previously found adequate to represent TCPA classes around the country. (*See* Doc. 159 at 33-34).

In sum, because Plaintiffs have not met their burden to prove that the Stand-Alone Fax Machine Class is ascertainable, the Undersigned finds that not all the requirements of Rule 23(a) are met and, therefore, Plaintiffs' motion for class certification should be denied. Notwithstanding this recommendation, the Undersigned also addresses the requirements of Rule 23(b) below.

## B.     Fed. R. Civ P. 23(b)(3)

A proposed class must fall within one of the three categories in Rule 23(b). Plaintiffs rely on Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Undersigned addresses each of these criteria below.

### i.        Predominance

As for the first inquiry of Rule 23(b)(3), the predominance requirement, Plaintiffs must establish that common questions of law and fact predominate over any individual, plaintiff-specific issues. A plaintiff need not show that "*all* questions of fact or law [are] common, but [only that] some questions are common and that they predominate over individual questions." *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1178 (11th Cir. 2010) (alteration and emphasis in original; quoting *Klay*, 382 F.3d at 1254). "Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Williams*, 568 F.3d at 1357 (quoting *Klay*, 382 F.3d at 1255; alteration in original). "If, 'after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, [their] claims are not suitable for class certification under Rule 23(b)(3).'" *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1170 (quoting *Klay*, 382 F.3d at 1255; alteration in original). The Court must, therefore, assess the extent to which Plaintiffs' legal claims require individualized proof.

Plaintiffs argue "the overriding common question is . . . whether [Defendant] is the 'sender' of the faxes under 47 C.F.R. § 64.1200(f)(10)." (Doc. 159 at 35). Nevertheless, Plaintiffs also contend that the questions of "whether the faxes are 'advertisements,'" whether Defendant had express permission, "[w]hether the faxes 'satisfy the TCPA's notice requirements,'" and "whether the violations were 'willful or knowing'" are all common to the class. (*Id.* at 35-36). Additionally, Plaintiffs argue that "the pure legal question of whether the [AmeriFactors Order] has the effect in this action that Mastercard claims is itself a common question." (*Id.* (citation omitted)).

In response, Defendant argues that even in the case of the proposed Stand-Alone Fax Machine Class, the predominance requirement is not satisfied. (Doc. 162 at 45). Defendant maintains that the question of "[w]ho used a fax machine versus an online fax service" will be used to determine membership in the Stand-Alone Fax Machine Class. (*Id.*). Defendant contends that "Plaintiffs cannot answer this question with class-wide evidence, so individual inquiries would predominate the proceedings in the same manner." (*Id.*).

The Undersigned finds that given Plaintiffs' proposed method for determining class membership requires many individual inquiries, the potential common questions in this case do not predominate. *See, e.g.*, *Stalley v. ADS All. Data Sys.*, 296 F.R.D. 670, 685 (M.D. Fla. 2013) (finding that the individual inquiries that "call[] into question how the class might be ascertained . . . also suggests that common questions do not predominate over individual ones"); *see also Morgan v. Adventist*

51

*Health Sys./Sunbelt, Inc.*, No. 6:18-cv-1342-Orl-78DCI, 2020 WL 1674307, at *8 (M.D. Fla. Jan. 15, 2020) (noting that proposed method for determining class membership required individual inquiries and was "inextricably intertwined" with substantive merits issues defeated predominance). Thus, because the Undersigned finds above that the proposed method for determining class membership by way of affidavit implicates Defendant's due process rights and allowing Defendant to contest each affidavit requires a series of mini-trials, *see Karhu v. Vital Pharmacy Inc.*, 621 F. App'x 945, 947 (11th Cir. 2015), the Undersigned finds that the Stand-Alone Fax Machine Class fails to satisfy Rule 23(b)(3).

### ii. Superiority

The superiority inquiry focuses on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1183-84 (quoting *Klay*, 382 F.3d 1269). Relevant factors include:

> (A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)  the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Plaintiffs argue that "[h]ere, class members have little incentive to sue individually, there are no existing individual lawsuits, and judicial efficiency is best served by adjudicating all claims in one proceeding." (Doc. 159 at 37). Additionally, Plaintiffs maintain that "there will be no unusual complications in providing class notice" or calculating and distributing damages. (*Id*. at 38). As to Defendant's argument that "its potential liability is substantial," Plaintiffs argue that "the magnitude of the exposure does not affect superiority." (*Id*. at 39 (citing *Klay*, 382 F.3d at 1274)). Further, Plaintiffs contend that in deciding superiority, the Court is "not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives," including "thousands of separate lawsuits by the class members." (*Id.* at 40 (citing *James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 648 (M.D. Fla. 2011))).

Defendant argues that Plaintiffs have "fail[ed] to demonstrate superiority for several, independent reasons." (*Id*. at 46). First, Defendant contends the lack of "predominance leads inevitably to a lack of superiority." (*Id*. (citing *Sacred Heart Health Sys.*, 601 F.3d at 1184)). Second, Defendant argues that where, like here, "a class action cannot be managed effectively, it is not superior." (*Id*. at 47 (citing *Microsoft*, 297 F.R.D. at 472)). Third, Defendant argues that "Plaintiffs fail the

superiority test because the relief they seek is redundant of relief already afforded to this same class." (*Id.*).[6]

As an initial matter, TCPA classes are frequently certified as class actions because the "large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims" all point toward the superiority of a class action. *C–Mart, Inc. v. Metropolitan Life Ins. Co.*, 299 F.R.D. 679, 691 (S.D. Fla. 2014) (citation omitted). Nevertheless, in light of the Undersigned's finding that the individual inquiries would predominate over the common questions, the Undersigned finds that a class action would not be superior to individual actions. *See Sacred Heart Health Sys., Inc.*, 601 F.3d at 1184 (concluding that "the less common the issues, the less desirable a class action will be as a vehicle for resolving them"); *see also Morgan*, 2020 WL 1674307, at \*3.

---

[6] On October 11, 2016, Defendant First Arkansas Bank moved to stay this action pending the final approval of a class action settlement reached between First Arkansas and Dental Equities in a parallel action pending in the Eastern District of Arkansas, *Davis Neurology, P.A. v. Dental Equities, LLC, et al.*, Case No. 4:16-cv-371-BSM (E.D. Ark.) (the "*Davis* action"). (Doc. 58; Doc. 78 at 2). On December 28, 2016, the Court granted the stay as to Defendants First Arkansas Bank and Dental Equities only, explaining that both actions "arise out of and concern the same fax transmissions alleged to have been sent by or on behalf of defendants in violation of the TCPA in this case, and plaintiffs in this case are within the settlement class definition." (Doc. 78 at 2-3, 7). Nevertheless, "MasterCard [was] not a defendant, nor a released party in the *Davis* action." (*Id.* at 3).

Even if individual inquires did not predominate over the common questions, however, the Undersigned still finds that a class action is not superior. Where there is no administratively feasible means of identifying the class members, it logically follows that a class action would not be the superior method of adjudicating the controversy. *See Karhu v. Vital Pharm., Inc.*, No. 13-60768-CIV, 2014 WL 815253, at *11 (S.D. Fla. Mar. 3, 2014), *aff'd on other grounds,* 621 F. App'x 945 (11th Cir. 2015). Having found that the Stand-Alone Fax Machine Class is not ascertainable, so too the Undersigned finds that a class action is not the superior method of adjudicating the controversy. *See id.*

As for Defendant's remaining argument, the Undersigned is not persuaded that the class fails the superiority requirement because a class was previously certified in the *Davis* action. (*See* Doc. 162 at 47). To determine whether Plaintiffs are impermissibly claim splitting, as Defendant suggests, the Court must analyze "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *See Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841-42 (11th Cir. 2017). Defendant concedes that it was not a party in the *Davis* action or released in the *Davis* settlement agreement (*see* Doc. 162 at 48 n.31), and Defendant does not adequately explain in its briefing why it should be considered a privy of any party in *Davis* such that the test for improper claim splitting is satisfied here.

Nevertheless, for the reasons discussed above, the Undersigned finds that the Stand-Alone Fax Machine Class fails the superiority requirement of Rule 23(b)(3).

55

## CONCLUSION

In sum, Plaintiffs fail to demonstrate that the All Fax Recipients Class or the Online Fax Service Class have standing under the TCPA in light of the AmeriFactors Order. While the Stand-Alone Fax Machine Class has standing under the TCPA, the Undersigned finds that Plaintiffs' proposed class is not ascertainable, that the common questions do not predominate over the individualized inquiries, and that class action is not the superior method by which to adjudicate the claims. Accordingly, for the reasons stated above, the Undersigned **RESPECTFULLY RECOMMENDS** that Plaintiffs' Amended Motion for Class Certification (Doc. 159) be **DENIED** in its entirety.

Respectfully recommended in Chambers in Fort Myers, Florida on January 29, 2021.

Mac R. McCoy
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual finding and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the

Report and Recommendation. *See* 11th Cir. R. 3-1. A party wishing to respond to an objection may do so in writing fourteen days from the filing date of the objection. Any written objections or response thereto may not exceed thirty pages inclusive of all parts. **The parties are warned that the Court will not extend these deadlines or page limitations.**

Copies furnished to:

Counsel of Record
Unrepresented Parties